**Affirmed and Memorandum Opinion filed November 6, 2014.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-14-00424-CV**
**NO. 14-14-00444-CV**

---

### IN THE INTEREST OF A.J.E.M.-B., A CHILD

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-02991J**

---

## M E M O R A N D U M   O P I N I O N

In these consolidated appeals, the parents, R.M. (the Mother) and W.E.B. (the Father), appeal from the decree terminating their parental rights to A.J.E.M.-B. (the Child).[1] The Mother raises two issues challenging the sufficiency of the evidence supporting both the predicate termination grounds and the trial court's best interest finding. The Father raises a single issue challenging the sufficiency of

---

[1] To protect the identity of the minor, we have not used the names of the Child, parents, or other family members. *See* Tex. R. App. P. 9.8.

the evidence supporting the best interest finding. We affirm.

## I. BACKGROUND

The Child was born March 21, 2013, and shortly after his birth, the Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision. The report alleged the Mother tested positive for marijuana (THC) during her pregnancy. The Mother admitted eating marijuana brownies before her positive drug test, but she claimed she did not learn the brownies contained marijuana until after she ate them. At the same time, the Mother also tested positive for Xanax (benzodiazepines) and Vicodin (opiates), but she claimed to have prescriptions for these medications. During the Department's investigation, both parents admitted past drug use. The Mother admitted she "previously abused marijuana." The Mother informed the investigator that she is disabled, having been diagnosed with spina bifida at age twelve. She asserted she has suffered from back problems and anxiety disorders, and she has been prescribed Seroquel, Xanax, and hydrocodone. The Father, the Mother's boyfriend of two years, admitted a criminal background that included convictions for drug possession. He also admitted to daily marijuana use. The investigator who visited the parents' residence described it as "filthy;" floors and counters were covered with trash, and there was a strong odor of cigarette smoke throughout the residence.

Based on the Department's concerns that the parents had neglected the Child and he was in danger, on March 28, 2013, the parents accepted a safety plan. Under the terms of the plan, the Mother agreed to move into the paternal grandmother's home, submit to random drug tests, and participate in Family Based Safety Services (FBSS). The Department modified the parents' safety plans twice, but each of the plans ultimately "broke down." The Department asserted that the

2

parents did not comply with the safety services set out in the plans, and the parents were unable to name any satisfactory relatives to provide care for the Child.

On May 14, 2013, the Department filed suit for protection of the Child, seeking conservatorship and termination of parental rights. That day, the trial court signed an emergency order naming the Department temporary sole managing conservator of the Child. On May 23, 2013, after conducting an adversary hearing, the trial court signed an order continuing the Department's temporary conservatorship. The trial court also ordered DNA testing, which subsequently confirmed the Father's parentage of the Child. On June 12, 2013, the trial court appointed Child Advocates, Inc. as guardian ad litem for the Child.

After a status hearing on July 11, 2013, the court approved the parents' service plans and ordered compliance with the services set out in the plans to obtain return of the Child. The court ordered the parents to participate in various tasks necessary to provide a safe environment for the Child, including services related to their drug use. Permanency Plan Progress Reports were filed with the court and regular permanency hearings were held to document the parents' progress in completing these services.

Trial to the court was held May 15, 2014. The Department's caseworker, the parents, the Child Advocate representative, and the foster mother testified. At the conclusion of the trial, the court granted the Department's request for termination of both parents' parental rights. On June 3, 2014, the trial court signed a final judgment reciting that both parents' parental rights were terminated based on findings that termination is in the Child's best interest and that the parents committed acts establishing the predicate termination grounds set out in subsections D, E, and O of Texas Family Code Section 161.001(1). Tex. Fam. Code §§161.001(1)(D), (E) & (O); 161.001(2). The Department was appointed

3

sole managing conservator of the Child. Both parents filed notices of appeal.[2]

## II. BURDEN OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (citing *In re J.F.C.*, 96 S.W.3d at 266). We assume that the factfinder resolved

---

[2] The Mother's appeal was docketed under case number 14-14-00424-CV, and the Father's appeal was docketed under case number 14-14-00444-CV.

disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.*

We consider and weigh all of the evidence, including disputed or conflicting evidence, in reviewing termination findings for factual sufficiency of the evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 267). We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

### III. PREDICATE TERMINATION GROUNDS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d at 344. In her first issue, the Mother challenges the legal and factual sufficiency of the evidence to support the predicate termination grounds under section 161.001(1). The trial court found three predicate grounds for termination: subsections D, E, and O. *See* Tex. Fam. Code § 161.001(1)(D), (E) & (O). Relevant to this proceeding, section 161.001(1) provides that termination is warranted if the trial court finds by clear and convincing evidence, in addition to the best interest finding, that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

5

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

Tex. Fam. Code § 161.001(1)(D), (E) & (O).

## IV. ENDANGERMENT

Both subsections D and E of section 161.001(1) use the term "endanger." "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Endangerment under subsection D may be established by evidence related to the child's environment. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home. *See J.D.S. v. Tex. Dep't of Family & Protective Servs.*, ____ S.W.3d ____, No. 08-14-00191-CV, 2014 WL 4745794, at *5 (Tex. App.—El Paso Sept. 24, 2014, no pet.). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A parent's inappropriate, abusive, or unlawful conduct can create an environment that endangers the physical and emotional well-being of a child, as required for termination under subsection D. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Under subsection E, the evidence must show the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014).

In evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody of the child. *See In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, under subsection E, courts may consider conduct both before and after the Department removed the child from the home. *See Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ) (considering persistence of endangering conduct up to time of trial); *In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *7 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.) (considering parent's pattern of criminal behavior and imprisonment through trial).

A parent's drug use can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re J.O.A.*, 283 S.W.3d at 345; *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.). It also can be appropriate to consider the use of multiple prescription drugs. *See In re T.D.L.*, No. 02–05–00250–CV, 2006 WL 302126, at *7–8 (Tex. App.—Fort Worth Feb. 9, 2006, no pet.) (mem. op.) (considering mother's continuous abuse of prescription drugs in finding the evidence supported the trial court's subsection E finding); *see also In re V.R.*, No. 02–09–00001–CV, 2009 WL 2356906, at *6 (Tex. App.—Fort Worth July 30, 2009, no pet.) (mem. op.) (finding sufficient evidence of endangerment based on mother's drug history and her drug use during the termination proceedings, regardless of the medical reasons for which she claimed she took the drugs; mother had taken Vicodin while pregnant and tested positive for the drug at child's birth and at times after birth, which showed a continuing course of conduct).

The record contains ample evidence of the parents' drug use. During the Department's investigation, both parents admitted past drug use. The Mother admitted she "previously abused marijuana," and she had used Xanax for anxiety and Vicodin for back pain for thirteen years. The Mother acknowledged she might be addicted to Xanax. The Mother testified at trial that she has been prescribed Seroquel, Xanax and hydrocodone, and she has taken these drugs for over ten years. After a car accident about thirteen years earlier, she takes Vicodin for pain. She also testified that she sometimes takes a painkiller for a broken wisdom tooth that she cannot afford to have removed.

The Department's caseworker, Robyn Harrison, testified the Mother did not provide evidence of her prescriptions to the Department. The Mother claimed at trial, however, that she showed the prescriptions to the initial investigator. The

Mother presented no evidence other than her own testimony to support her assertion that the medication she acknowledged taking was prescribed and was necessary to treat diagnosed conditions. She did not present evidence of her prescriptions, any medical records, or testimony from a physician at trial. The trial court, as the factfinder, was entitled to evaluate the credibility and weight of the Mother's testimony that she was properly prescribed these medications for over ten years. We cannot weigh a witness's credibility, a matter within the fact finder's province. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

The Children's Crisis Care Center (4C's) submitted a report, which was admitted at trial, confirming both parents had tested positive for marijuana on March 28, 2013. The 4C's report stated the Mother also tested positive for marijuana, benzodiazepines and opiates at the Child's birth earlier that month. In addition, the record reflects the Mother tested positive for marijuana in January 2013, during her pregnancy. The Mother claimed to have unknowingly ingested marijuana and that was the only time she used marijuana during or since her pregnancy. A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child. *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet). The Mother's ex-husband told the 4C's investigator that the Mother could not care for their two children and he did not permit them to be around her because she smoked marijuana and took prescription medication. The Mother acknowledged she had taken these same prescription medications while pregnant with her older children. The 4C's report found that while both parents "reported being under the influence of substances daily, they minimized concerns and were in denial of the impact that substance use has on their ability to sufficiently be in tune to the needs of their child."

In addition to 4C's report of the Mother's positive drug test for marijuana,

benzodiazepines, and hydrocodone in March of 2013, during her pregnancy, and at the Child's birth, results from the Mother's subsequent drug tests were admitted at trial. On May 23, 2013, the Mother's test results were negative for marijuana, opiates, and cocaine. Drug tests taken on July 11, 2013, showed the Mother had negative results for marijuana, opiates, and cocaine, but a positive result for hydrocodone. The December 5, 2013 records showed negative results for marijuana, opiates, and cocaine, but positive results for benzodiazepines, hydrocodone, and hydromorphone. On April 1, 2014, the Mother's test results were negative for marijuana, opiates, cocaine, and benzodiazepines.

The Child Advocate testified she was concerned that the Mother appeared lethargic during a visit with the Child and she slurred her words. Her report had noted the Mother was "slightly lethargic" during each of the Advocate's four visits with her. The 4C's report also concluded there was concern about the Mother's ongoing use of highly addictive medications. Because the Mother had not explored alternative methods of treatment, the report concluded that it appeared her use was more out of addiction than necessity.

Even though the Father has not challenged the endangerment finding, the evidence of his endangering conduct is relevant to the Child's environment before removal. *See In re M.R.J.M.*, 280 S.W.3d at 502. At the beginning of the case, the Father admitted to daily marijuana use. At a Family Team Meeting on May 13, 2013, the Department's worker observed that the parents were extremely disheveled and unclean. The parents smelled of such strong body odor and stale cigarette smoke that the workers in the office had difficulty breathing. The Child's clothes were extremely soiled, his bib was covered in cigarette ashes, and the baby's bottle was dirty with hair and lint around the nipple. The Father appeared to be suffering from tremors as if he was going through withdrawal. The Father

acknowledged he was trying to wean himself off Xanax. After the adversary hearing on May 23, 2013, the Father submitted to a drug test and the results were positive for marijuana and cocaine.

The Mother claimed when she learned the Father used cocaine about a month before the Child's birth, she "kicked him out." She admitted, however, she permitted him to return about a week after the baby's birth. The Mother claimed this was the only time the Father used cocaine, and while he formerly used marijuana, he stopped as soon as the Department became involved after the Child's birth. The Father testified that in high school, he had become depressed after his baby died at age six months. He was prescribed Xanax and reported he had a seizure disorder induced by the psychotropic medications he took as an adolescent. The Father also reported that he had taken Xanax for the past ten years to treat stress and anxiety. He admitted that if he did not have a prescription, he would buy the medication illegally "on the street." The Father also stated he self-medicated with marijuana for many years.

Reviewing all the evidence in the light most favorable to the endangerment findings, we conclude that a reasonable fact finder could have formed a firm belief or conviction as to the truth of the termination findings under section 161.001(1)(D) and (E). In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the endangerment findings is not so significant that a fact finder could not reasonably have formed a firm belief or conviction as to the truth of these termination findings. *See In re H.R.M.*, 209 S.W.3d at 108.

## V. REMOVAL FOR ABUSE OR NEGLECT

Under subsection O, the services ordered for return of the Child must be "as a result of the child's removal from the parent under Chapter 262 for the abuse or

neglect of the child."[3] Tex. Fam. Code § 161.001(1)(O). The Department attached to its May 14, 2013, petition seeking protection and conservatorship of the Child its supporting affidavit setting out the circumstances necessitating the Child's removal. The affidavit described, among other matters, the parents' acknowledged drug use, the Father's criminal history, and the conditions of the home. The Mother contends the trial court improperly admitted and considered the Department's affidavit over her hearsay objection. We review rulings on the admissibility of evidence for an abuse of discretion. *In re A.M.*, 418 S.W.3d 830, 840 (Tex. App.—Dallas 2013, no pet.).

The affidavit from the original caseworker, Ayana Evans, detailed her interviews with the parents and described her observations of the Child's physical neglect. According to the affidavit, the Mother tested positive for marijuana, Xanax and Vicodin on January 31, 2013. The Mother admitted to marijuana use during the pregnancy, and she admitted to long-term use for about thirteen years of Xanax for anxiety and Vicodin for a back injury, including while she was pregnant. The Mother also stated she had prescriptions for Seroquel and hydrocodone. The Mother acknowledged she could be addicted to Xanax, but she declined any referrals for services to address the problem. The Mother stated she had previously abused marijuana. The Mother acknowledged a criminal history. The Mother also stated she has three other children that do not live with her. The Mother did not want the other children involved in the case and stated she did not see them often. The caseworker also recounted her interview with the Mother's ex-husband, in which he stated he does not allow his children around the Mother because of her use of marijuana and prescription drugs. He stated the Mother cannot take care of

---

[3] Chapter 262 is entitled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child." Subchapter B, sections 262.101–.115, covers "Taking Possession of Child."

the children. The caseworker also reviewed the Mother's divorce decree which contained a finding that "the Mother had a history or pattern of child neglect" of the children of the marriage. The Mother's visits were restricted and ordered supervised at the Victims Assistance Center.

The affidavit also recited that the Father admitted to past and current drug use and was seen to be having physical effects from withdrawal from benzodiazepine addiction. He admitted to daily marijuana use. The Father acknowledged he had a criminal record, including drug possession. In the caseworker's opinion, the parents were "incapable of providing a safe and stable home for [the Child] and it is believed that this child would be in immediate danger of his physical health and safety should he be allowed to remain in the home."

The Department argues that any error in admitting the caseworker's affidavit was waived because the same information was contained in other documents that were admitted without objection. We agree. For example, the Mother's family service plan states, "[The Mother] appears to struggle with substance abuse and prescription medication abuse. . . . [She] has abused prescription medication and illegal substances for several years. . . . The living conditions are very dirty and inappropriate for a young child . . . [The] home was found to be deplorable and unsafe for a small infant." The Father's plan stated, "The Father has admitted to using marijuana every day and was knowledgeable about [the Mother's] prescription drug and illegal drug use during her pregnancy[,] however [he] did not attempt to get help for [the Child]." The reports from 4C's and Child Advocates, admitted without objection, also contain much of the same information. The Mother's divorce decree was also admitted without objection. Thus, the Mother's complaint is waived. *See In re A.C.*, 394 S.W.3d 633, 645 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that if a party later permits the same or similar

evidence to be introduced without objection, the error in the admission of evidence is waived).

Even if the complaint were not waived, we recognize that the Supreme Court of Texas has approved the consideration of an affidavit such as the one in this case to evaluate the sufficiency of the evidence supporting subsection O. *See In re E.C.R.*, 402 S.W.3d 239, 248–49 (Tex. 2013). The court analyzed Family Code section 161.001(1)(O) in *In re E.C.R.* and held that the Department's affidavit and subsequent finding by the trial court authorizing the child's removal were sufficient evidence to establish, as a matter of law, that the child had been removed for abuse or neglect. *Id.* Thus, the supreme court concluded the Department's affidavit, "even if not evidence for all purposes, shows what the trial court relied on in determining whether removal was justified" due to a risk of abuse or neglect. *Id.; see also Z.L. v. Tex. Dep't of Family & Protective Servs.,* No. 03-13-00598-CV, 2014 WL 538888, at *4 (Tex. App.—Austin Feb. 7, 2014, no pet.) (mem. op.) (recognizing the trial court's orders were not proof that the allegations contained within them were in fact true; the orders were evidence of why the child was removed). In reaching its decision, the supreme court construed the words "abuse" and "neglect" broadly to include the risks or threats of the environment in which the child is placed. *See In re E.C.R.*, 402 S.W.3d at 248.

In light of these pronouncements, we review of the sufficiency of the evidence supporting removal due to abuse or neglect. The adversary hearing was held May 23, 2013, within ten days of the Child's removal. Caseworker Evans testified about the parents' positive drug tests and the Department's recommendations for placement of the Child. The caseworker's affidavit contained statements about the Mother's neglect of the children of her marriage, which are also relevant to removal of the Child due to abuse or neglect. *See In re E.C.R.,* 402

S.W.3d at 245–49 (stating the danger faced by other children in the parent's care may be considered in evaluating removal under subsection O). After considering Evans' testimony along with her affidavit, the court found sufficient evidence to support the removal of the Child. The court signed a temporary order naming the Department the Child's temporary managing conservator. The order recites the court's findings in compliance with the statute.[4] *See* Tex. Fam. Code § 262.201(b) (listing the required findings for removal to protect the child). The trial court's order is evidence the child was removed for abuse or neglect. *See In re E.C.R.,* 402 S.W.3d at 248; *In re A.W.B.,* No. 14-11-00926-CV, 2012 WL 1048640, at * 2 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.) (holding trial court's temporary order following adversary hearing was evidence the child was

---

[4] The temporary orders signed May 23, 2013, recite in relevant part:

3.1. The Court finds there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and makes efforts to eliminate or prevent the child's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the child's removal and enable the child to return home, there is a substantial risk of a continuing danger if the child is returned home.

3.2. The Court finds sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the child and for the child to remain in the home is contrary to the welfare of the child.

3.3. The Court finds with respect to the [Child], that reasonable efforts consistent with the child's health and safety have been made by the Department to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return home, but that continuation in the home would be contrary to the welfare of the child.

3.4. The Court finds that placement of the child with the child's noncustodial parent or with a relative of the child is inappropriate and not in the best interest of the child.

3.5. The Court finds that the following orders for the safety and welfare of the child are in the best interest of the child.

removed for abuse or neglect); *In re J.T.G.*, No. 14–10–00972–CV, 2012 WL 171012, at \*14, \*16 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, no pet.) (mem. op.) (holding statements in 4C's report constituted sufficient evidence of removal due to abuse or neglect and noting the trial court made the requisite findings under Chapter 262 after an adversary hearing).

Because a reasonable factfinder could have formed a firm belief or conviction that the Child was removed for abuse or neglect, we conclude that the evidence is legally sufficient to support the trial court's finding. *See In re E.C.R.*, 402 S.W.3d at 248–49; *see also In re A.D.*, No. 02-14-00085-CV, 2014 WL 3778237 (Tex. App.—Fort Worth July 31, 2014, no. pet.). The Mother argues that the Child was not harmed; he was fed and had no bruises. The Department's affidavit states the Child appeared to be clean and healthy with no marks or bruises. Similarly, in *In re E.C.R.*, there were no evident signs that the child had been physically abused; he appeared clean, healthy, and developmentally on target. *See* 402 S.W.3d at 241. Yet the supreme court found removal due to the risk of abuse or neglect was established as a matter of law. *See id.* We conclude the evidence contrary to the court's finding is not so overwhelming as to prevent a reasonable factfinder from forming a firm belief that the Child was removed for abuse or neglect. *See In re J.F.C.*, 96 S.W.3d at 266. We overrule this portion of the Mother's first issue.

## VI. COMPLIANCE WITH SERVICES

We also consider the evidence relevant to the Mother's completion of court-order services, which is part of subsection O's requirements. *See* Tex. Fam. Code § 161.001(1)(O) (stating a predicate ground for termination exists when a parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child").

On July 11, 2013, the court approved the parents' service plans and ordered compliance. The court warned the parents that their failure to do so could result in the termination of their parental rights. *See* Tex. Fam. Code §§ 263.101–.106; 161.001(1)(O). The Mother's family service plan incorporated in the trial court's order required the Mother to complete the following tasks:

Fully participate in services, comply with visitation, attend court hearings, and keep all appointments as scheduled with the assigned caseworker;

Fully participate in a drug and alcohol assessment and follow all recommendations including in-patient or out-patient treatment, individual, group and/or family therapy, and random drug testing as requested by the Department;

Actively participate in in-patient treatment, including after care;

Obtain and maintain stable and verifiable employment for six months;

Refrain from engaging in criminal activities;

Complete a psychosocial evaluation and follow all recommendations;

Obtain and maintain stable housing that is clean, safe, and free of hazards, and cooperate with unannounced visits to the residence, allowing the Department access.

Actively participate in parenting education classes, provide certificate of completion, and demonstrate learned behaviors during family visits;

The trial court signed Additional Temporary Orders to Obtain Return of the Children ordering the Mother to:

Complete a substance abuse treatment program, if requested;

Complete a psychological examination and follow all recommendations;

Participate in counseling which may include individual, group, or family therapy sessions;

Complete parenting classes;

Complete a drug and alcohol assessment and follow all

recommendations of the drug and alcohol assessment;

Complete random drug tests, which may include a hair follicle test;

Remain drug free;

Refrain from engaging in criminal activity;

Maintain stable housing;

Maintain stable employment;

Complete all services outlined in the Family Plan of Service.

On May 15, 2014, the first day of trial, the Child Advocate representative filed a report recommending termination. The report noted the Mother had established housing, but remained unemployed. The Mother acknowledged that even though she claimed a disability, she was able to work part-time. The Mother had not worked during the pendency of these proceedings, and she stated she last worked part-time for three months in 2008. The Mother had not completed parenting classes or undergone substance abuse treatment. The report also noted the Mother's positive drug tests.

At trial, the Department's caseworker also testified the Mother failed to complete her services. In particular, the Mother failed to complete an inpatient or outpatient treatment program, failed to complete a drug and alcohol assessment, did not participate in a psychiatric evaluation and did not complete parenting classes. The caseworker testified the Mother tested positive for marijuana and some "possibly" prescribed medication in violation of her service plan. The caseworker asserted that the Mother never provided proof of prescriptions for these medications. The Mother claimed she had provided proof of her prescriptions to a previous caseworker or investigator. The trial court, as the factfinder, resolved this disputed testimony, and we may not disturb its credibility determinations.

On appeal, the Mother also asserts that she was never ordered to complete drug treatment. The record does not support this claim. The Mother was ordered to

"complete a psychological examination and follow all recommendations." The evidence reflects the Mother participated in the psychological evaluation performed by 4C's, but she did not follow its recommendations. The July 31, 2013, 4C's report, which was admitted at trial, detailed the results of the Mother's psychological evaluation. The report recommended the Mother participate in a full psychiatric evaluation, a substance abuse rehabilitation program, a drug assessment, individual therapy, and a full review of medications prescribed to identify alternative treatments. The permanency plan progress reports filed with the court recite these recommendations. The trial court's permanency orders provide that "the permanency plans for the child, set out in the service plans and/or permanency progress reports filed with the Court, are approved and adopted by this Court and incorporated herein as if set out verbatim in this order. The actions specified in each service plan and/or Permanency Progress Report on file as of the date of this order represent actions which this court requires of the parent specified in the service plan and/or Permanency Progress Report and the actions must be performed in order for the parent to regain custody of the child who [is] presently in the temporary managing conservatorship of the Department." Thus, the Mother was ordered to comply with these services.

In addition, before the permanency hearing held March 11, 2014, the court-appointed Child Advocate filed a report, which was later admitted in evidence at trial. The report recited the recommendations set out in the Mother's psychosocial evaluation by 4C's. The Child Advocate emphasized that "[i]t is recommended that [the Mother] have her physical and prescriptive needs evaluated by a court-approved physician and psychiatrist to determine her ongoing needs for medications and drug treatment, if needed. To date, [the Mother] has not participated in any evaluations to ensure the appropriateness of her prescriptions."

The Mother acknowledged at trial that she had not participated in an evaluation of her medications.

The Mother claimed that she had only one more class before completion of the parenting program, and the last session was scheduled to be held the Saturday after trial. A letter from the ESCAPE Family Resource Center to that effect was admitted in evidence. The Mother did not explain why, when the service plan had been in effect for ten months, she waited until the eve of trial to take the six-week parenting classes. The Mother also complained that she lacked transportation needed to participate in services and she was discriminated against because she did not live on a bus route. The Mother further claimed that the outpatient services the Department recommended did not accept her Medicaid and she could not afford the $4,000 to $16,000 cost. She agreed she was not "indigent," but stated she did not have that kind of money. Neither Child Advocates nor the Department had heard before trial that the Mother claimed that payment for treatment was an issue. The Mother also complained that the Department did not permit a psychiatric evaluation by the psychiatrist of her choice. The caseworker explained that the Department would pay for a psychiatric evaluation at an approved center, the Kingshaven Counseling Center. It is undisputed the Mother did not submit to the evaluation. The Mother also asserts that the Department failed to prove that it made appropriate arrangements and referrals for her to complete the services. We note that the Mother's service plan contained contact information for various providers, including addresses and phone numbers. At trial, the caseworker testified she gave the Mother several resources for inpatient and outpatient services. Although the Department had not agreed to pay for treatment, the caseworker "found services that are state-funded and will also accept Medicaid," and gave the Mother the complete list.

20

The Family Code does not allow consideration of excuses for non-compliance with section 161.001(1)(O). *See In re M.C.G.*, 329 S.W.3d 674, 675–76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Even substantial compliance with a family service plan is insufficient to avoid a termination finding under subsection O. *In re C.M.C.*, 273 S.W.3d at 875; *see also In re T.T.*, 228 S.W.3d 312, 319–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting Texas courts have uniformly found substantial compliance with the provisions of a court order inadequate to avoid a termination finding under subsection O). Sporadic incidents of partial compliance with court-ordered family service plans do not alter the undisputed fact that the parent violated many material provisions of the trial court's orders. *See In re J.F.C.*, 96 S.W.3d at 278.

By failing to complete her service plan, the Mother has not demonstrated an ability to provide the Child with a safe environment. *See In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination under subsection O because mother failed to meet her service plan's material requirements including drug assessment, finding a job, and providing a safe home).

In sum, under the applicable standards of review, the record evidence is legally and factually sufficient to support the finding that the Mother failed to comply with the provisions of a court order specifically establishing the actions necessary for her to obtain the return of the Child after his removal due to abuse or neglect. Reviewing all the evidence in the light most favorable to the termination findings, we conclude that a reasonable fact finder could have formed a firm belief or conviction as to the truth of the termination findings under section 161.001(1)(O). In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the termination finding under section 161.001(1)(O) is not so significant that a fact finder could not reasonably have

formed a firm belief or conviction as to the truth of the termination finding under section 161.001(1)(O). *See In re H.R.M.*, 209 S.W.3d at 108. We overrule the Mother's first issue.

## VII. BEST INTEREST

Before terminating a parent's rights, the factfinder also must find that terminating the parent's rights is in the child's best interest. Tex. Fam. Code § 161.001(2); *see also In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (noting that the primary focus of termination proceedings is protecting the best interest of the child). Both parents have argued that the evidence is insufficient to support the finding that termination of their parental rights is in the best interest of the Child. We review the entire record in deciding a challenge to the court's best interest finding. *In re E.C.R.*, 402 S.W.3d at 250.

There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the

22

parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

In addition, the Texas Family Code sets out factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe environment, including: the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. Tex. Fam. Code § 263.307(b); *R.R.,* 209 S.W.3d at 116.

### *Danger to the Child, Including Parental Drug Use and Criminal Activity*

We begin our analysis by noting that evidence supporting termination under one of the grounds listed in section 161.001(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(1) grounds and best interest). Thus, it is appropriate to consider at the outset the evidence recited above relevant to endangerment.

Of particular note, the evidence of the parents' drug use is recited above. A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). The factfinder can give "great weight" to the "significant factor" of drug-related

conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of a child).

In addition to the evidence recited above supporting removal of the Child, the Father continued to use drugs after the Child was removed. The Father's drug tests on May 23, 2013, and July 11, 2013, were positive for cocaine and marijuana. Although the Father claimed at trial he only used cocaine once, on December 5, 2013, the hair sample taken from the Father again reflected positive results for cocaine and marijuana. The Father testified he is no longer addicted to Xanax. Both parents claimed at trial that the Father sought drug treatment at MHMR (Mental Health and Mental Retardation), and he had been able to quit taking Xanax.

The Father admitted a criminal background that included convictions for drug possession. The Father had multiple criminal convictions for possession of drugs both before and after the Child's birth. At trial, the records from the following of the Father's drug convictions were admitted:

> April 22, 2003, misdemeanor possession of marijuana, sentenced to two days in jail;
>
> January 19, 2006, misdemeanor possession of marijuana; sentenced to thirty days in jail;
>
> January 19, 2006, misdemeanor possession of a controlled substance (Alprazolam);[5] sentenced to thirty days in jail;
>
> January 9, 2009, misdemeanor possession of marijuana; sentenced to thirty days in jail;

---

[5] Xanax is the trade name for Alprazolam.

24

August 20, 2012, misdemeanor possession of a controlled substance (Alprazolam); sentenced to thirty-five days in jail;

January 6, 2014, felony possession of a controlled substance (codeine); four years deferred adjudication probation;

March 12, 2014, misdemeanor possession of a controlled substance (Alprazolam); sentenced to forty-five days in jail.

The parents explained the recent convictions that occurred during the pendency of this case. They both testified that the Father was bringing the Mother her Xanax when he was arrested. It was within the factfinder's province to evaluate the credibility of the parents' explanation.

The evidence of continued criminal conduct, including several periods of incarceration, supports the trial court's best interest determination. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (evidence of parent's "inability to maintain a lifestyle free from arrests and incarcerations" is relevant to best interest determination); *see also In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (recognizing a parent's criminal history including incarceration, though not dispositive, is a factor that may be considered in determining the best interest of a child).

The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d at 502. While the parents' drug tests a month before trial were negative, the factfinder may determine that a parent's changes shortly before trial are too late to have an impact on the best interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied).

We acknowledge the Mother's testimony that she inadvertently used marijuana one time when she tested positive and the Father only used cocaine one time when he tested positive. However, as the factfinder, the trial court was

entitled to disbelieve the Mother's testimony and rely on the drug test results and other evidence. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

### *Parents' Stability and Compliance with Services*

It was also appropriate for the court to consider that the parents did not comply with their court-ordered service plans for reunification with the Child in reaching its best interest determination. *See In re E.C.R.*, 402 S.W.3d at 249 (stating findings under subsection O can support the best interest finding). The evidence of the Mother's failure to complete her services is recited above. The trial court evaluated the credibility of the Mother's reasons for non-compliance and we may not disturb the factfinder's credibility determinations. The Father also did not comply with his court-ordered service plan. He did not remain drug free or refrain from criminal activity. He was not employed and was unable to provide for the Child. He did not complete a parenting program, although he also provided a letter from the provider stating he lacked one class before completing the course.

Stability and permanence are paramount in the upbringing of children. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). A parent's failure to show that she is stable enough to parent a child for any prolonged period entitles the trial court "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.).

The parents' failure to complete services related to their long history of drug use, the Father's frequent arrests and incarcerations, and the parents' lack of employment, support the factors related to stability and compliance with services

26

in evaluating the best interest of the Child.

### *Child's Desires, Needs, and Proposed Placement*

The Child was very young at the time of trial and there is no evidence of his desires. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d at 931. The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See J.N.R.,* 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Therefore, evidence about the present and future placement of the Child is relevant to the best interest determination. *See C.H.*, 89 S.W.3d at 28.

The caseworker testified at trial that the Child has been in the same foster home for a year, almost his entire life. In her opinion, the Child has bonded with the foster parents, but he does not appear bonded with the parents. The evidence also shows the Child was well cared for by the foster parents. They were meeting all the Child's needs and took him to the doctor when needed. The Child always appeared clean and well-clothed. The Child Advocate also testified that the Child was doing very well in the foster home and had bonded with the foster parents. She had visited the foster parents' home several times and found it appropriate. She reported the home appeared "clean, well-maintained and a safe environment for [the Child]." The Child Advocate also remarked that the foster parents had noticed the Child had a "subtle issue" of one leg turning in and they had addressed it with

27

the pediatrician. She testified the foster parents are interested in adopting the Child.

The foster mother also testified. She stated that her family treated the Child as their own and he participated in all their family events. She stated she was "absolutely" willing to adopt him. In contrast, the parents offered no evidence of their plans for the Child. The parents were still together at time of trial, and there was no evidence that the problems that led to removal of the Child had been resolved. Accordingly, we conclude the evidence related to these factors supports the trial court's best interest finding.

### *Parenting Abilities*

We may also consider each parent's past performance as a parent in evaluating their fitness to provide for the Child and the trial court's determination that termination would be in the Child's best interest. *See In re C.H.*, 89 S.W.3d at 28. Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.,* No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.)

The Mother has three other children, but they do not live with her. Her mother has custody of her oldest child, a son age fourteen, and her ex-husband has primary custody of her two other children.[6] During its investigation, the Department spoke with the Mother's ex-husband who stated the Mother had supervised visits with their two children. He also stated she smoked marijuana, used prescription drugs, and was unable to care for the children. He stated he does not allow their children around her for these reasons. The Mother's divorce decree,

---

[6] The parents are joint managing conservators, but the Mother's ex-husband has the right to designate the children's residence.

28

admitted at trial, stated the Mother had "a history or pattern of child neglect," and she was required to have supervised visits with their children.

The Father also has another child whose mother no longer permits him to visit. When the Father was initially interviewed by the Department, he denied having any other children.

When the Department workers visited the parents' residence after receiving the referral alleging neglect, the residence was not clean, was filled with trash, and had a strong odor of cigarette smoke. The parents live in a one-bedroom apartment. The 4C's report noted the Mother had no bed for the Child and the Mother was instructed about "co-sleeping and safe sleep." At a meeting with the Department in May, 2013, the Child's clothes were extremely soiled, his bib was covered in cigarette ashes, and the baby's bottle was dirty with hair and lint around the nipple.

The foster mother testified that when the Child came into her care, he "reeked" of cigarette smoke. The Child's clothing was sticky, had ashes on it, and smelled of smoke. The Mother explained the baby's bottle had spilled in the diaper bag after the Department took the Child. After the Child was removed from the Mother's care, he was immediately seen by a doctor for diaper rash that required antibiotics. The rash was so severe it left an open wound and required five weeks to heal.

The caseworker testified at trial that although the Mother attended her court-ordered visits, she did not seem interested in the visits. She did not "really" play with the baby. She sometimes cancelled visits or ended them early. The Child Advocate reported that the Mother slurred her words and was lethargic during a visit. The caseworker acknowledged that the Father actively participated in the visits and they appeared enjoyable. She also stated the parents provided some toys and clothes for the Child.

The Mother testified her house is very clean, she has a baby bed, a playpen, a walker, bottles, and other items ready if the Child is returned to her. The Mother claimed she had a good relationship with her older children. She testified that her 14-year-old son usually comes over every day after school. Her other two children visit on weekends and she has them the entire summer. Although the Mother complained about lack of transportation to complete her services, she testified about taking her other children to the zoo, the Children's Museum, NASA, and for ice cream. It was within the trial court's discretion to determine the weight and credibility of this testimony. *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied).

In sum, the record contains evidence supporting the best interest finding based on the parents' pattern of abusing prescription and illegal drugs, lack of stable employment, failure to comply with court-ordered services, and the Father's pattern of arrests that resulted in periods of incarceration, even while these proceedings were pending. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering parent's drug use, inability to provide a stable home, and failure to comply with his family service plan in holding evidence supported best interest finding). Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the parents' parental rights is in the Child's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that termination of the parents' parental rights is in the Child's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. Therefore, after considering the relevant factors under the appropriate standards of

review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the Child's best interest. *See* Tex. Fam. Code § 161.001(2). We overrule the Mother's second issue and the Father's sole issue.

## VIII. CONCLUSION

We have determined that legally and factually sufficient evidence supports the trial court's findings of the predicate grounds under section 161.001(1)(D), (E), and (O) and that termination of the parents' parental rights is in the best interest of the Child. Therefore, the trial court's judgment is affirmed.

/s/    John Donovan
Justice

Panel consists of Justices Boyce, Jamison, and Donovan.