**AFFIRM; and Opinion Filed December 16, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00907-CV

## IN THE INTEREST OF A.M., A CHILD

### On Appeal from the 255th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF09-12865

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice O'Neill

In this suit affecting the parent child relationship, Father has appealed numerous procedural and evidentiary rulings including (1) a finding of domestic violence against him, (2) various evidence admitted at trial, (3) the validity of Mother's divorce from her prior husband and its relation to the division of community property, and (4) Mother's appointment as sole managing conservator. We affirm the trial court's judgment. Because the facts are well-known to the parties, we shall address only those relevant to dispose of each issue. TEX. R. APP. P. 47.1.

**Entry of a Protective Order Without First Conducting a De Novo Review**

In his first issue, Father argues the trial court abused its discretion by entering a protective order based upon the associate judge's family violence finding without first conducting a de novo hearing after a timely request. A trial court abuses its discretion if it fails to rule on a party's appeal from an associate judge's report. *See Fountain v. Knebel*, 45 S.W.3d 736, 740 (Tex. App.—Dallas 2001, no pet.).

Pursuant to the family code, a judge may refer certain matters to an associate judge for a hearing. TEX. FAM. CODE ANN. § 201.005 (West 2008). Upon ruling on the referred matter, the associate judge is to issue a report, which may contain the associate judge's findings, conclusions, or recommendations. *Id.* § 201.11(a). A party has the right to appeal the associate judge's report to the referring court within seven days of receiving proper notice of the associate judge's ruling. *Id.* § 201.015(a) (West Supp. 2012). A party who timely appeals the associate judge's report is entitled to a hearing de novo before the referring court. *Fountain*, 45 S.W.3d at 739.

On September 17, 2009, an associate judge entered a temporary protective order, which included a finding of a history of domestic violence against Father because "family violence has occurred and is likely to occur in the future." The associate judge's protective order extended to both Mother and A.M, the child of the marriage.

Father appealed the associate judge's finding of a history of family violence and the issuance of a protective order. He requested a de novo hearing on September 21, 2009, which fell within the statutory deadline for requesting review. *See* TEX. FAM. CODE ANN. § 201.015(a) (party must request de novo review within seven days of associate judge's recommendation). The record shows the parties appeared before the trial court on October 8, 2009, but the de novo hearing was reset for November 10, 2009.

On November 5, 2009, the parties entered into a Rule 11 agreement in which the parties stipulated the following:

> It has been represented to the Court that there has been no pattern of child neglect or family violence by any party to this case within the two years preceding the filing of this case or during the pendency of this case. Mother will agree to drop the Protective Order currently in place against father and will agree to sign or execute any additional documents necessary to accomplish removal of the current protective order for the benefit of Mother and against Father.

The de novo hearing was then removed from the trial court's docket by agreement. Findings of fact and conclusions of law later entered by the trial court state the trial court "declined to enter an Order based upon the Rule 11 Agreement on or about February 4, 2010." However, the record does not show any further action by Father to reset his appeal on the trial court's docket.

We agree with Mother that Father's inaction after the Rule 11 agreement waived his right to a de novo hearing of the associate judge's finding of family violence and entry of a protective order. While section 201.015(f) provides that after notice, the referring court "shall hold a de novo hearing not later than the 30th date" after a request, a party may also waive his right in writing or on the record. *See* TEX. FAM. CODE ANN. §§ 201.015(f), (g) (West Supp. 2012). The purpose of section 201.015(f) is to require the prompt resolution of appeals from an associate judge's ruling. *See In re A.J.F.*, 313 S.W.3d 475, 477 (Tex. App.—Dallas 2010, no pet). Although Father did not waive his de novo review in writing, we conclude that by agreeing to remove the hearing from the docket after the parties entered into a Rule 11 agreement, Father indicated to the trial court his desire to no longer pursue a de novo review, as there was no longer any issue for the trial court to review that needed "prompt resolution." *Id*.

In reaching this conclusion, we are not persuaded by Father's reliance on *Fountain v. Knebel*, 45 S.W.3d 736, 739 (Tex. App.—Dallas 2001, no pet.) in which this court stated, "Once a party has filed a notice of appeal, the party has completed the prerequisites necessary to be entitled to a de novo hearing." In that case, the party requesting de novo review of a discovery ruling timely filed her notice of appeal and despite the trial court's attempts to resolve the dispute informally, the appealing party continued to insist upon her right to a de novo review. *Id*. In fact, she appeared for a hearing on her appeal no less than three times and demanded a continuance when the case was called to trial because the referring court had failed to rule on her appeal. *Id*. Thus, unlike the present facts, there was no indication to the trial court in *Fountain*

that the appealing party wished to waive her right to a de novo hearing. Rather, the party in *Fountain* continued to vigorously pursue a hearing, unlike Father. Accordingly, based on the facts before us, we cannot say the trial court abused its discretion by failing to conduct a de novo hearing. We overrule Father's first issue.

**Admission of Transcription of Tapes**

In his third issue, appellant argues the trial court erred by admitting the transcriptions of three audio tape recordings, over his objection, because Mother failed to disclose and produce all the tapes in her possession despite a proper discovery request. Mother responds Father has waived his arguments and alternatively, he was not unfairly surprised or prejudiced by the admission of the transcripts.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion. *Bufkin v. Bufkin*, 259 S.W.3d 343, 351 (Tex. App.—Dallas 2008, pet. denied). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for it. *Id*. The trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id*.

Although Father argues rule of civil procedure 193.6(a) requires automatic exclusion of the transcripts, we disagree. Texas Rule of Civil Procedure 193.6(a) provides that a party "who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed," unless the court finds there was good cause for the failure to make, amend, or supplement the discovery response, or the failure to make, amend, or supplement will not unfairly surprise or prejudice the other party. TEX. R. CIV. P. 193.6(a).

The record shows Mother had forty-eight hours of tape recordings from her interactions with Father between March and July of 2009. Mother's attorney picked three portions of the

–4–

recordings that were "really important" and had those portions translated to support her allegation of family violence by Father.[1]  Father was aware of these recordings when Mother submitted them on September 16, 2009.  The transcripts of the recordings were labeled as "Recording Number Four 4/13/09 6 07pm Length of recording 18 23 minutes," "Recording Number Ten 04/19/09 3 14pm 1 hour 9 mins length," and "Recording Number 18 06/18/09 8 36pm Length of recording 15 03 minutes."  Thus, the numbering of the transcripts clearly indicated there were at least eighteen tapes.  Additionally, the Rule 11 agreement between the parties further negates his contention that he was unaware of the tapes because it provided that "Mother will destroy any and all audio and video tapes in her possession other than the 3 recordings entered into evidence in the 255th District Court."  It is disingenuous for Father to claim he was surprised or suffered "trial by ambush" when the trial court allowed the three transcripts into evidence.[2]

Father's argument is further weakened by the fact he failed to file a motion to compel or a motion for sanctions prior to trial once he knew about the existence of other tapes.  *See, e.g., Lewis v. W. Waste Indus.*, 950 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1997, no writ) (noting the failure to file a motion for sanctions or a motion to compel waives any right to exclude testimony).  Thus, we cannot conclude the trial court abused its discretion by allowing the transcripts of three tape recordings into evidence.

However, even if the trial court erred in admitting the evidence, Father cannot show harm.  A successful challenge to an evidentiary ruling usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted, and the error was calculated to cause and probably did cause the rendition of an improper judgment.  *Brownsville*

---

[1] Mother and Father are originally from Pakistan.

[2] The trial court sustained Father's objection to any testimony regarding the tapes and did not allow the tapes themselves into evidence.

*v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995); *see also* TEX. R. APP. P. 44.1. In determining if the excluded evidence probably resulted in the rendition of an improper judgment, a court must review the entire record. *Brownsville*, 897 S.W.2d at 753.

Father contends the admission of the transcripts probably caused the rendition of an improper verdict because the record shows the social study, which included reference to the tapes, was critical to the counselor's conclusions that the parents did not have the ability to make joint decisions and Mother should be sole managing conservator.

The key issue Father overlooks is that regardless of what the other tapes may have shown regarding his character, the transcripts of the three tapes were sufficient to establish Father's abusive nature toward Mother and a finding of family violence. The transcripts included the following statements by Father. "I'm gonna break your face." "I hit you again and again because you don't reform yourself." "I'm telling you to be quiet. I don't want to hear a sound from you. Be quiet. Shut up, shut, up, shut up you bitch. " "Why have you been so quiet for the last hour? That's why I hit you. You ask me why I hit you on everything, that's why I hit you. Now tell me, answer me. You bitch, you don't say anything logical." "Don't give me lip, because if you do, I'll hit you. I can't tolerate your lip." "Have you realized, even after beating you up so much the other day, you have been repeating the same thing over and over again. You don't understand words, nor do you understand being beaten." "I'm gonna break your face if you give me bullshit. . . I'll slap you and break your teeth."

In addition, Mother testified to Father's abusive nature and Mother's friend testified to bruising on Mother. Accordingly, we cannot conclude Father has established he was harmed by the admission of the taped transcriptions under rule 44.1. Father's third issue is overruled.

**Failure to Grant a Continuance**

In his fourth issue, Father claims the trial court abused its discretion by denying his request for a continuance after he allegedly discovered Mother failed to produce the other tapes. Mother responds Father has failed to preserve his issue for review because his oral motion for continuance does not comport with Texas Rule of Civil Procedure 251. We agree with Mother.

When a party moves for continuance, rule 251 requires the party to show sufficient cause supported by affidavit, consent of the parties, or by operation of law. TEX. R. CIV. P. 251. The record shows Father asked for an oral continuance during trial, but did not support his request with an affidavit as required by rule 251. Therefore, his oral motion does not satisfy the provisions of rule 251, and he failed to preserve his complaint for our review. *See Strong v. Strong*, 350 S.W.3d 759, 762 (Tex. App.—Dallas 2011, pet. denied); *Taherzadeh v. Ghaleh-Assadi*, 108 S.W.3d 927, 928 (Tex. App.—Dallas 2003, pet. denied); *Favaloro v. Comm'r for Lawyer Discipline*, 13 S.W.3d 831, 838 (Tex. App.—Dallas 2000, no pet.). Father's fourth issue is overruled.

**Refusal to Vacate the Protective Order**

In his second issue, Father argues the trial court erred by refusing to grant his April 30, 2010 motion to vacate the protective order containing a family violence finding. Specifically, he argues the trial court committed reversible error when it refused "to vacate a PO entered adopting an associate judge's findings and recommendations in its report without [ . . . ] conducting a de novo hearing when a timely request for such a hearing had been made."

As concluded above, the trial court did not abuse its discretion by failing to conduct a de novo hearing; therefore, Father's argument is without merit. However, Father also asserts there is no evidentiary support for the denial of the motion to vacate. We interpret Father's argument as challenging the legal and factual sufficiency of the evidence supporting the trial court's

finding of family violence. Thus, we shall review the evidence accordingly. *See, e.g., Taite v. Zapata*, No. 02-10-00391-CV, 2011 WL 5118841, at *1 (Tex. App.—Fort Worth Oct. 27, 2011, no pet.) (mem. op.) (applying a legal and factual sufficiency review to the appeal of a protective order); *Clements v. Haskovec*, 251 S.W.3d 79, 84 (Tex. App.—Corpus Christi 2008, no pet.) (same); *Vongontard v. Tippit*, 137 S.W.3d 109, 112–13 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (same).

In determining whether the evidence is legally sufficient to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *Taite*, 2011 WL 5118841, at *1. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *F.D.I.C. v. F&A Equip. Leasing*, 854 S.W.2d 681, 685 (Tex. App.—Dallas 1993, no writ). An assertion that the evidence is factually insufficient to support a finding means the evidence supporting the finding is so weak, or the evidence to the contrary is so overwhelming, that the finding should be set aside. *Id.* at *2.

Father claims Mother cited "only to the clerk's record and exhibits from the trial on the merits in 2011 as evidentiary support for her argument that it was not error in 2010 to fail to vacate the PO." (Emphasis in original). Father's assertion is incorrect. Mother cited to transcripts of tape recordings between her and Father, which she submitted to the court on September 16, 2009. Thus, the trial court had the recordings in its possession prior to the September 17, 2009 entry of the temporary protective order, which was the basis for the final protective order.

As stated above, the transcripts contained many statements by Father indicating emotional and physical abuse against Mother. Based on this evidence, we conclude the evidence is both legally and factually sufficient to support the trial court's finding that family violence had

occurred, that family violence was likely to occur in the future, and Father had committed family violence against Mother. *See* TEX. FAM. CODE ANN. § 71.004 (West 2008) (defining "family violence" to mean "any act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault . . . ."). Appellant's second issue is overruled.

## Exclusion of Cultural Context Evidence

In his fifth issue, Father argues the trial court abused its discretion by sustaining Mother's objection to testimony by Donna Milburn, the court-appointed psychologist, regarding discussions the psychologist had with a third-party Muslim male concerning cultural context of the tapes between Mother and Father. Mother responds Father waived his argument by failing to make an offer of proof and even if properly preserved, the trial court acted within its discretion in excluding the testimony.

Here, the record shows Milburn testified she consulted with an Iranian-born industrial engineer about cultural issues because she wanted to make sure she understood the Middle Eastern culture when she considered parental placement of the child. Mother objected to the testimony as hearsay "from someone who is not a professional in the field."

The trial court then asked how the engineer's statements would be appropriate to rely on in evaluating the case. Milburn responded:

> I am required to make sure that I am being culturally aware. We have an ethical responsibility as psychologists to make sure we're not taking American values and transposing those on the individuals that we're making interpretations or providing services to . . . I was contacting him as a middle eastern Muslim man who was born in the middle east and immigrated over here to the United States. . . . I wanted to get someone who actually grew up in that region of the world to make sure I wasn't missing any kind of cultural issues or that I was misinterpreting something from a cultural standpoint.

–9–

She further stated she could not find anyone in the Dallas or Collin County area with a psychology background or involvement with the "psych association." The trial court then sustained Mother's objection. Father did not make an offer of proof regarding the excluded evidence.

Error is not preserved with regard to the exclusion of evidence unless the substance of the evidence is made known to the court by offer or was apparent from the context within the questions asked. TEX. R. EVID. 103(a)(2); *Akin v. Santa Clara Land, Co*., 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied). Without an offer of proof, the appellate court cannot determine whether the exclusion of evidence was harmful. *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.).

Father argues the questions asked and answered by Milburn, as outlined above, made it apparent from their context that "what Dr. Milburn would have testified to was the middle eastern professional's statement which Dr. Milburn considered in reaching her opinion that the statements and interaction reflected on the tapes, when placed in the cultural context, were not indicative of violence toward Mother or [his] inability to parent the Child." We do not agree.

Comments on the reasons for the testimony or why the testimony is admissible are insufficient; the proponent must describe the actual content of the testimony. *Mathews v. Dallas Cnty*., No. 05-01-00095-CV, 2001 WL 1671162, at *1 (Tex. App.—Dallas Dec. 20, 2001, no pet.). Moreover, while the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful. *Perez*, 74 S.W.3d at 66. Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal. *Id*. Because Father failed to make such an offer, he preserved nothing for our review. We overrule his fifth issue.

**Testimony Regarding Battered Women**

In his sixth issue, Father argues the trial court abused its discretion by overruling his objection to the testimony of Mary Kay Hamilton, an employee from a battered women's shelter. Mother argues Father waived his argument by not objecting when the same or similar evidence came in later through Hamilton's testimony. We review rulings on the admissibility of evidence for abuse of discretion. *Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 543 (Tex. App.—Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex. 2001).

The general rule is that error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *See Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). Here, the record shows Hamilton was a counselor at Genesis Women's Shelter. She testified regarding whether it was typical for women of domestic violence to recant statements about abuse and to return to their abuser. Father objected that Hamilton was not qualified to answer such questions, and the trial court sustained the objection.

Hamilton then continued to answer questions regarding her nine-years of experience at the shelter and her observations of certain behavior patterns of domestic abuse victims. When asked, "[D]o you often see women do things even to their own disadvantage in court cases in order to get the court case over with?," Father objected. Father alleged, "This line of questioning is anecdotal in nature." The trial court overruled his objection.

Hamilton then continued to testify, without objection, about her observations of Mother during counseling. She testified Mother made statements such as, "Whatever I can do to get this over with." Mother confided the abuse had been going on for some time, and she was "eager" to settle the divorce.

Hamilton also testified to the various types of abuse a person may experience, including physical, emotional, verbal, psychological, spiritual, and financial. Without objection, Hamilton testified as follows:

> I have observed [Mother] being terrified at the thought of what her husband could do, the threats, which are psychological in nature, by threatening to hurt her, to hurt her family, to have someone follow her and kill her, things like that, that those kind of–that's what I would call psychological abuse, that it's not physical abuse happening but that the fear of that happening can be devastating.

While Father urges us to consider his objection to "this line of questioning as anecdotal in nature" as a running objection such that the trial court was made aware of his complaint to the testimony, we decline his invitation. A party must timely object each time evidence is presented or risk waiver of potential error. TEX. R. APP. P. 33.1(a); *Bay Area Healthcare Group, Ltd.*, 239 S.W.3d at 235. A timely requested running objection could have preserved his complaint, but Father failed to make such an objection. Accordingly, and without concluding that Father made an appropriate objection because Hamilton subsequently testified to the characteristics of domestic abuse victims and that Mother fit the pattern of such abuse, Father has failed to preserve his issue for review. We overrule his sixth issue.

**Division of Property Based on Void Marriage**

In his seventh issue, Father asserts the trial court erred in its division of community property because Mother was never legally divorced from her prior husband, Firhaad Ja-hangir Ahed; therefore, there could be no legal marriage between Mother and Father in which to dissolve and divide community property. Mother responds Father cannot overcome the strong presumption that their marriage was valid.

Father specifically challenges the trial court's findings that Mother was twice divorced from her prior husband in Great Britain and Pakistan prior to her marriage with Father. Thus, Father contends any alleged marriage to Mother is void.

The validity of a marriage is reviewed for legal and factual sufficiency. *See Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). When conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d 802, 827 (Tex. 2005). When determining the sufficiency of the evidence supporting a finding on which the appellant bears the burden of proof, we set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In a bench trial, the trial court acts as the fact-finder and is the sole judge of witness credibility. *Nguyen*, 355 S.W.3d at 88. The fact-finder may choose to believe one witness over another, and we may not impose our own opinion to the contrary. *Id*.

The family code provides that a "marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse." TEX. FAM. CODE ANN. § 6.202(a) (West 2006). When two or more marriages of a person to different spouses are alleged, we presume that the most recent marriage is valid against each marriage that precedes it, until one who asserts the validity of a previous marriage proves its validity. *Id*. § 1.102 (West 2006); *Nguyen*, 355 S.W.3d at 89. This presumption is one of the strongest known to law; it is, in itself, evidence; and it may even outweigh positive evidence to the contrary. *Id*. (citing *In re Estate of Loveless*, 64 S.W.3d 564, 574 (Tex. App.—Texarkana 2001, no pet.)). The presumption's strength increases with the lapse of time, acknowledgements by the parties to the marriage, and the birth of children. *Nguyen*, 355 S.W.3d at 89.

This presumption that the most recent marriage is valid continues until a party proves the impediment of a previous marriage and its continuing validity. *Id*. Thus, the presumption places

the burden of proof on Father to establish (1) the prior marriage and (2) its continuing validity at the time of the subsequent marriage. *Id*.; *Loera v. Loera*, 815 S.W.2d 910, 911 (Tex. App.—Corpus Christi 1991, no writ). Once evidence is presented to show the previous marriage was not dissolved, then the fact-finder must determine whether the presumption of validity has been overcome. *Bailey-Mason v. Mason*, 122 S.W.3d 894, 898 (Tex. App.—Dallas 2003, pet. denied). If sufficient evidence is presented to establish the prior marriage and its continuing validity, any subsequent marriage is void. Tex. Fam. Code Ann. § 6.202(a).

The trial court admitted evidence of Mother's July 16, 2004 marriage to Firhaad Ja-hangir Ahed in the District of Luton, England. The trial court admitted another document showing a certified search was conducted of the Central Index of Decrees Absolute for England from 2004 to 2009; however no divorce decree of record between the two parties was found. A similar document search was also entered into evidence showing there was no record of divorce between Mother and Firhaad Ja-hangir Ahed in Pakistan. Thus, Father argues he has overcome the strong presumption that Mother's marriage to Firhaad Ja-hangir Ahed was legally dissolved.

After admission of this evidence, the trial court, as fact-finder, had to determine whether Father overcame the presumption of validity of his marriage to Mother. *See Bailey-Mason*, 122 S.W.3d at 898. In contradiction to Father's evidence, Mother presented signed documentation from Firhaad Ja-hangir Ahed, dated October 14, 2005, from the Islamic Cultural Society, Luton Mosque, that he wished to divorce Mother. The document stated Mother was "totally emancipated from the matrimonial relationship." The record further contains a divorce decree "in accordance [with] Mohammedan Law" signed by Firhaad Ja-hangir Ahed.

In an attempt to refute the validity of these documents, Father presented evidence that he believed these papers were fraudulent. Specifically, he relied on testimony from Susan Abbey, a board certified document examiner, who stated "with a reasonable degree of scientific certainty

–14–

that the signature in question is more likely than not to be not genuine." She believed there were "quite a few differences" in Firhaad Ja-hangir Ahed's signature between the documents. However, she admitted that there will always be slight differences between the same person's signature at different times.

Mother testified her father and ex-husband handled the divorce in Pakistan, and she was later given the divorce deed. She believed she was divorced from Firhaad Ja-hangir Ahed. Moreover, the rule 11 agreement, though never entered by the trial court, specifically states that Father agreed, "Based on the representation of my Wife that she was divorced and was not married to anyone else at the time of her marriage to Aman, Husband's understanding and agreement is that his marriage to Wife is valid."

Although Father presented evidence challenging the validity of his marriage to Mother, we conclude the record contains both legally and factually sufficient countervailing evidence to support the trial court's conclusion that their marriage was valid. As the fact-finder, the trial court was in the best position to weigh the parties' credibility and chose to believe Mother's evidence regarding her divorce from Firhaad Ja-hangir Ahed. Accordingly, the evidence supports the trial court's findings and conclusions that Mother was divorced from Firhaad Ja-hangir Ahed and that her marriage to Father was valid. As such, Father cannot complain about the division of property based on a void marriage. Thus, Father's seventh issue is overruled.

### Appointment of Sole Managing Conservator

In his eighth issue, Father challenges the trial court's order appointing Mother sole managing conservator. Mother responds the evidence is sufficient to support the order.

The determination of who should be appointed a managing conservator is left to the sound discretion of the trial court. *Naguib v. Naguib*, 137 S.W.3d 367, 372 (Tex. App.—Dallas 2004, pet. denied). The trial court is in the best position to determine what will be in the best

interest of the child because it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. *Id*.

Section 153.004(a) states that when determining whether to appoint a party as sole or joint managing conservator, the court shall consider evidence of family violence by a party directed against the party's spouse, a parent of the child, or anyone younger than eighteen years old that occurred within a two-year period before filing of the suit or during the pendency of the suit. TEX. FAM. CODE ANN. § 153.004(a) (West 2008). Thus, a rebuttable presumption exists that the appointment of parents as joint managing conservators is in the best interest of the child. *Id*. § 153.131(b) (West 2008). However, a finding of a history of family violence involving a parent removes the presumption. *Id*.; *see also Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.). If credible evidence supports a history or pattern of past or present abuse, then the trial court may not appoint joint managing conservators. TEX. FAM. CODE ANN. § 153.004(b). In determining whether there is credible evidence, the trial court shall consider whether a protective order was rendered against the parent during the two year period preceding the filing of the suit or while the suit was pending. *Id*. § 153.004(f). Where parties testify to different versions of the same incident, the trial court is the sole judge of the weight and credibility of the evidence. *Stallworth*, 201 S.W.3d at 347.

Father relies on his complaint in issue one regarding the entry of the protective order and his complaint in issue three regarding the court's consideration of the audio tapes to support his argument that the trial court abused its discretion by appointing Mother sole managing conservator. He concedes that "if the existence of the PO can be properly considered" and "if the recommendation in the Social Study is properly considered," then "there is evidentiary support" to rebut the presumption of joint managing conservatorship. Having overruled both of the issues Father relies on to support his arguments, we likewise conclude the record supports the

trial court's order appointing Mother as sole managing conservator.  We overrule Father's eighth issue.

## Cumulative Error

In his final issue, Father argues based on the above issues the trial court has committed cumulative error requiring reversal.  While some reviewing courts have recognized a "cumulative-error doctrine" in situations where the record shows multiple errors that in isolation are not reversible but in combination give rise to reversible error, the cumulative error doctrine does not apply in this case because we have not found any errors committed by the trial court. *See Univ. of Tex. v. Hinton*, 822 S.W.2d 197, 205 (Tex. App.—Austin 1991, no writ). Accordingly, we overrule Father's ninth issue.

## Conclusion

Having overruled all of Father's arguments, we affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

120907F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF A.M., A CHILD

No. 05-12-00907-CV

On Appeal from the 255th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF09-12865.
Opinion delivered by Justice O'Neill.
Justices Lang-Miers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Quratulain Malik recover her costs of this appeal from appellant Aman Malik.

Judgment entered this 16th day of December, 2013.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE