**AFFIRM; and Opinion Filed February 4, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01667-CV

### IN THE MATTER OF VANE MONYENCHE FRASURE
### AND JAMES ANDREWS FRASURE

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV13-00376**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Fillmore, and Justice Evans
Opinion by Justice Fillmore

James Andrews Frasure challenges a protective order entered in favor of his estranged wife, Vane Monyenche Frasure.[1] In his first two issues, James contends the evidence is legally and factually insufficient to support the trial court's findings that family violence has occurred and is likely to occur in the future. In his third issue, James contends the trial court abused its discretion by denying his motion for continuance. We affirm the trial court's judgment.

### Background

On July 16, 2013, the Dallas County District Attorney's Office filed an application for protective order against James on behalf of Vane. At the hearing on the application, Vane testified she and James had been in a relationship for four years and had been married for two

---

[1] Because the parties have the same surname, we will refer to them by first names in this opinion.

years.  They had three children, a five-month-old son and three-year-old twin sons.  Vane and James separated on July 8, 2013.

The first incident of violence by James that Vane described occurred in June 2010.  Vane testified that, when she was pregnant with the twins, James hit her.  Subsequently, on November 25, 2010,[2] when the twins were about two-and-a-half months old, James suggested the family go to someone else's house for Thanksgiving dinner.  Vane had not fully recovered from the birth of the twins.  It was also cold and raining, and Vane believed the children were too young to be taken to another house.  According to Vane, James threatened her and called her names when she refused to go out for Thanksgiving dinner.  He then starting hitting her and hit her at least once in the head. Vane testified she took a picture "of that," but James broke the phone she used to take the picture.  According to Vane, one of James's sisters was present in the apartment at the time.

Vane also testified about an incident in March 2011 when, while she was holding one of the twins, James began to call her names and hit her in the back.  Vane put the child into bed. James then began to choke her and she could not breathe. Vane did not call the police following the incident, and James later apologized.  Vane did, however, call the police in June 2011 because James was "really hitting" her and "abusing" her.  When the police arrived, James left the apartment.  When he returned, he apologized and "everything went back to normal."

According to Vane, James's sisters intervened in 2011 to help her.  They took her to a hotel to spend the night.  They all discussed the situation as a family, and James agreed he would not abuse her anymore.  James said he loved her and wanted his family.  James's sisters arranged for him to see a Christian psychologist.  However, James kept only three appointments with the counselor.

---

[2] Vane initially testified this incident occurred on November 25, 2011, but later corrected her testimony.

–2–

In July 2012, Vane's mother passed away and several friends and relatives came to the apartment to comfort her. James came home and was furious. James told Vane's friends and relatives to leave the apartment and said, "if you don't, I'm going to shoot you." Vane knew that James had a gun and believed the gun was probably in the apartment that day. Vane testified that James threw the food and drinks brought by her friends and relatives out of the apartment.

Vane also described an incident in February 2013 when, during an argument, James hit her and started throwing things, including her phone. Vane was scared, ran out of the apartment with the youngest child, and called the police. When the police officers arrived, Vane told them that James hit her, but the officers did not arrest James. The officers spoke to James and Vane about how the situation was not good for the children. They suggested that Vane go to a shelter, but she chose to stay at the apartment

According to Vane, the incident that led to her seeking the protective order occurred on July 8, 2013. James, who worked the night shift as a nurse, came home from work and discovered the electricity to the apartment had been turned off because the bill had not been paid. Vane testified that James came into the bedroom where she was sleeping, took her phone away from her, and said, "bitch, you were supposed to pay the lights." Vane testified that James was "raging and yelling" at her. James then called the electric company and managed to have electricity restored to the apartment.

While James was talking on the phone, Vane bathed the children and then went into the bathroom to take a shower. According to Vane, James came into the bathroom and turned the lights off. Vane testified that James had a pair of scissors in his hand, pointed the scissors at her, and said, "bitch, I'm going to kill you." Vane ran from the apartment and asked the people working in the leasing office to call the police.

Officer Jose Lemus testified that he and Officer Beyer[3] responded to the call. Officer Beyer spoke to Vane, and then the two officers went to the apartment. James told the officers that he had an argument with Vane about bills, but nothing else happened. Officer Beyer asked James if there had been some kind of fight or threat with scissors. James responded there had not been a fight and the only scissors he knew about were in the kitchen. James and the officers went into the bedroom, and Officer Beyer noticed a pair of scissors in the bathroom. Officer Beyer, as the senior officer, decided to arrest James on a Class C misdemeanor assault charge. A picture taken by Officer Beyer shows a pair of scissors, a little larger than a credit card, underneath a pair of earrings and a hair clip. Vane admitted the earrings and the hair clip belonged to her.

According to Officer Lemus, the Dallas Police Department (DPD) has a policy when responding to a family violence complaint that, if there is a report of actual physical abuse and the alleged perpetrator is still present, "somebody is going to jail." If there is a credible statement that violence occurred, a DPD police officer will not just separate the parties.

Detective Kyle Jobson testified he is assigned to the DPD's family violence division. Jobson reviewed the file relating to Vane's complaint and, based on the facts, decided to upgrade the charge to aggravated assault. He then forwarded the case to the "legal department."

Vane testified that, after James was released from jail, he came back to the apartment and was "trying to break the door to get in." She called the police, and was told a police officer was already present in the apartment complex. The officer came to her apartment, asked her to put James's things outside the door, and then asked James to leave. James did not come back to the apartment until after she moved out on July 11, 2013. James put items that Vane left in the

---

[3] Officer Beyer's first name is not in the appellate record. According to Officer Lemus, Officer Beyer was ill on the day of the hearing.

–4–

apartment in her car and put the car in the garage. Vane was able to get the car after the apartment complex gave her a key to the garage.

According to Vane, James has attempted to contact her after July 11, 2013. She was requesting a protective order because, even though James said he was trying to change, "it's just getting worse."

James testified that, on July 4, 2013, he received information about a conversation between Vane and another man. Although he was concerned about the stability of his marriage, he did not communicate that concern to Vane. Instead, he asked Vane "whether there was anything she needs to come clean about." He confronted Vane with the information in his possession on July 7, 2013. In a text message exchange between James and Vane on July 7, James indicated he was "not happy with the situation at hand," did not see himself "moving forward" with Vane, and thought they should "take some time apart." In a subsequent text, James accused Vane of being unfaithful. Vane responded "What do you mean? Unfaithful by having a face book account?" James responded that he had copies of Vane's conversations with men. Vane accused James of talking to other women and being "ready to move onto the next step." James indicated "when I go for divorce, I'm also seeking custody of my children." He also accused Vane of marrying him "for papers" and stated he would be sending information from Vane's Facebook account to "immigration to show for my evidence of your immediate deportation for running scams on an American citizen for papers." He also indicated he would have Vane's phone turned off in two weeks.

Vane admitted that James sent her a text message on July 7, 2013, but denied he told her that he wanted a divorce. She also denied she had been unfaithful. Vane thought she and James "were okay" following the July 7 text messages. Vane testified she is not a citizen of the United States, but was in the process of obtaining her green card based on her marriage to James.

However, James threatened a number of times during the marriage to not support her immigration application and said he would have her deported. Vane has now filed an immigration application based on James's abuse.[4]

According to James, on July 8, 2013, he came home from work and discovered the electricity to the apartment had been disconnected. He called the electric company and made arrangements to restore electricity to the apartment. He denied having a fight with Vane and denied brandishing scissors at Vane or threatening to kill her. He also denied knowing there was a pair of scissors in the bathroom, but testified he knew there was a pair of scissors in the kitchen. James did not follow Vane after she left the apartment. He knew something was wrong when the police officers came to the apartment. He was arrested for a Class C assault.

After he was released from jail on July 9, 2013, James went to the apartment and knocked on the door. He did not know if Vane was home. Once he discovered Vane was in the apartment, he left the property and stayed in a motel for two nights. He returned to the apartment after he learned Vane had moved. James denied trying to contact Vane after July 11, 2013. James testified that he filed for divorce after he was released from jail and did not want to be around Vane.

James admitted Vane called the police in June 2011 and February 2013, but denied Vane told the police officers who responded to the calls that James hit her. James claimed Vane used the threat to call the police as a "scare mechanism." He denied ever hitting or choking Vane and stated he did not recall wanting to go to someone else's house for Thanksgiving dinner in 2010. James denied his sisters ever took Vane to a hotel or intervened in the issues between him and Vane. He denied that he attended counseling. Although he recalled people being present at the

---

[4] The Violence Against Women Act allows battered spouses and children of American citizens or lawful permanent residents to obtain or keep their lawful status in the United State independent of their abuser spouse or parents. 8 U.S.C.§ 1154 (West 2005 & Supp. 2014).

apartment after Vane's mother died, he did not recall those people leaving quickly. He admitted he owned a gun, but testified he had given the gun to a friend before the temporary protective order was entered.

James denied he had been previously arrested in Rockwall for domestic violence or assault, but admitted he had been arrested in Rockwall for a "dispute" with his girlfriend. He claimed there "was nothing there." He admitted, however, that if it was documented that he was arrested for a Class A assault, it was probably true. He testified his girlfriend filed for a protective order after she "committed family violence against me."

The trial court orally stated it was always difficult in the "she-said/he-said" type of situation present in this case. It recognized it had the responsibility to determine the credibility of the witnesses and "that's very hard to do in this kind of circumstance when it's so contrary." The trial court also indicated it was troubled by James's testimony that he "had no family violence or no record which apparently we subsequently discovered that you did." The trial court found that family violence had occurred in the past.

The trial court then turned to the question of whether family violence was likely to occur in the future. The trial court first noted the pending divorce litigation would require continued communications, relationships, and potential violence between the parties. The trial court also noted Vane's immigration situation raised the potential of contact between her and James. The trial court rendered a protective order against James in which it found that family violence had occurred and was likely to occur in the foreseeable future.

### Sufficiency of the Evidence

In James's first two issues, he challenges the legal and factual sufficiency of the evidence to support the trial court's findings that family violence had occurred and would likely occur in the future.

*Standard of Review*

In determining whether the evidence is legally sufficient to support a finding, we consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 807, 827; *In re A.M.*, 418 S.W.3d 830, 838–39 (Tex. App.—Dallas 2013, no pet.). A legal sufficiency challenge to a family violence protective order may be sustained only when "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *In re F.K.M.*, No. 05-11-00276-CV, 2012 WL 939271, at *3 (Tex. App.—Dallas Mar. 19, 2012, no pet.) (mem. op.) (quoting *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998)); *see also Vives v. Gersten*, No. 05-13-01463-CV, 2014 WL 7498016, at *2 (Tex. App.—Dec. 29, 2014, no pet. h.) (mem. op.). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

In reviewing a factual sufficiency challenge, we weigh all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Vives*, 2014 WL 7498016, at *3. We will overturn a finding only if it so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772; *In re A.M.*, 418 S.W.3d at 839. We defer to a trial court's factual findings if they are supported by the evidence. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *In re F.M.B.*, No. 02-12-00153-CV, 2014 WL 70108, at *5 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op.) (per curiam).

The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819 (legal sufficiency review); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (factual sufficiency review). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *City of Keller*, 168 S.W.3d at 819, 822; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

*Analysis*

The trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. §§ 81.001, 85.001(a), (b)(1) (West 2014). Family violence is:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1). "Family" includes individuals who are spouses of each other. *Id.* § 71.003; TEX. GOV'T CODE ANN. § 573.024(a)(1) (West 2012).

Finding Family Violence Occurred

In his first issue, James contends the evidence is legally and factually insufficient to support the trial court's finding that family violence had occurred. James specifically argues (1) there is a complete absence of evidence of family violence because Vane's testimony must be disregarded based on her perjury; (2) the trial court based its ruling on evidence barred by rules of law and evidence when it indicated it believed James had a history of family violence when there was no evidence James had ever been convicted of family violence or had a protective order entered against him due to family violence; and (3) the evidence offered to prove a vital fact is no more than a mere scintilla and conclusively established the opposite of a vital fact

because Vane's testimony was not credible and she had a clear bias in the outcome of the hearing beyond an alleged need for protection.

As to James's second argument, our review of the record does not indicate the trial court based its finding that family violence had occurred between James and Vane on whether James had committed family violence in Rockwall. Rather, the trial court was clearly troubled by James's inconsistent testimony regarding the circumstances surrounding his arrest in Rockwall and used those inconsistencies in determining the credibility of James's testimony that he never committed family violence against Vane. Whether there was evidence that James was convicted of assault involving family violence or had a protective order entered against him in Rockwall was not necessary to the trial court's credibility determination.

James's first and third arguments are based on Vane's testimony not being credible. Vane testified that, on July 8, 2013, James became angry because the electric bill had not been paid, yelled at her, and called her names. He then followed her into the bathroom, brandished a pair of scissors at her, and threatened to kill her. She was scared, ran from the apartment, and called the police. Further, in addition to the events of July 8, 2013 that led to James's arrest, Vane testified about a number of incidents during which James hit her or choked her.

Based on the July 7 text message exchange, James asserts Vane committed perjury when she testified she had no knowledge of James's intent to divorce her, seek custody of the children, or withdraw his support for her application for citizenship. James contends that Vane's alleged perjury "not only illustrates her inclination to lie, but shows her bias to say whatever she needs to obtain a protective order and affirmative finding of family violence." James further argues that, even without the alleged perjury, Vane's testimony did not support a finding of family violence because there was no evidence of a disturbance or altercation, Vane had no injuries, and the scissors were found under items belonging to Vane.

–10–

The factfinder is free to reject or accept all or part of a witness's testimony. *See City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761; *Peña v. Garza*, 61 S.W.3d 529, 532 (Tex. App.—San Antonio 2001, no pet.). Although there was contradictory testimony at trial, the trial court evidently believed Vane's testimony regarding the family violence that she endured from James and did not believe James's testimony that he had not committed any family violence toward Vane. *See Flanigan v. Glasgow*, No. 04-11-00516-CV, 2012 WL 3104419, at *3 (Tex. App.—San Antonio Aug. 1, 2012, pet. denied) (mem. op.). Viewing the evidence in the light most favorable to the trial court's finding, we conclude there is more than a scintilla of evidence that family violence occurred. Further, viewing the evidence in a neutral light, the evidence supporting the trial court's finding is not so weak or so contrary to the overwhelming weight of all the evidence as to be clearly wrong or unjust. Because the evidence is legally and factually sufficient to support the trial court's finding that family violence had occurred, we resolve James's first issue against him.

Finding Family Violence Is Likely To Occur In The Future

In his second issue, James argues the evidence is legally and factually insufficient to support the trial court's finding that family violence is likely to occur in the future because, other than Vane's incredible testimony, there was no evidence of a pattern of family violence and James's actions after July 8, 2013 show he will have no contact with Vane in the future. "In cases involving family violence protective orders, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future." *Vives*, 2014 WL 7498016, at *4; *see also In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order."). While past violence does not mandate a finding of likely future violence, it can support

such a finding in some cases where there were multiple instances of past violence. *Vives*, 2014 WL 7498016, at \*4; *In re F.K.M.*, 2012 WL 939271, at \*3.

Vane testified about a number of incidents of family violence by James and that, although James promised to change, the situation had worsened. She also testified James had attempted to contact her after she moved out of the apartment. Although James argues this testimony is not credible, it was the role of the trial court, as the factfinder, to determine the credibility of the witnesses. *See City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Based on Vane's testimony of past family violence, the trial court could reasonably infer family violence was likely to occur in the future. Further, the trial court could reasonably find that the parties' divorce and children, as well as Vane's immigration status, would lead to contact between James and Vane in the future.

Reviewing the evidence in the light most favorable to the finding and indulging every reasonable inference in support of the finding, we conclude that there was more than a scintilla of evidence supporting the trial court's finding that family violence is likely to occur in the future. Further, viewing the evidence in a neutral light, the evidence supporting the trial court's finding is not so weak or so contrary to the overwhelming weight of all the evidence as to be clearly wrong or unjust. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that family violence is likely to occur in the future. We resolve James's second issue against him.

## Denial of Motion for Continuance

In his third issue, James contends the trial court erred by denying his motion for continuance. When a party moves for continuance, rule of civil procedure 251 requires that the party show sufficient cause supported by affidavit, consent of the parties, or by operation of law. TEX. R. CIV. P. 251. Here, James orally moved for a continuance to allow him to secure the

testimony of his sisters to rebut Vane's testimony. James did not support his request with an affidavit as required by rule 251. Therefore, his oral motion does not satisfy the provisions of rule 251, and he failed to preserve his complaint for our review. *See In re A.M.*, 418 S.W.3d at 838. We resolve James's third issue against.

The trial court's judgment is affirmed.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


131667F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF VANE
MONYENCHE FRASURE AND JAMES
ANDREWS FRASURE

No. 05-13-01667-CV        V.

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. CV13-00376.
Opinion delivered by Justice Fillmore, Chief
Justice Wright and Justice Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Vane Monyenche Frasure recover her costs of this appeal from appellant James Andrews Frasure.

Judgment entered this 4th day of February, 2015.