**Affirmed and Memorandum Opinion filed December 14, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00513-CV

### HUMBERTO FABIAN CABALLERO, Appellant

### V.

### MARIA CHRISTIAN CABALLERO, Appellee

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2016-15733**

## M E M O R A N D U M   O P I N I O N

Appellee Maria Christian Caballero applied for a protective order against her former husband, appellant Humberto Fabian Caballero. After a hearing in which both Maria and appellant testified, the trial court granted Maria's application, issuing a two-year final protective order. Appellant challenges the trial court's order in three issues.

In his first issue, appellant asserts that the final protective order infringes on

certain constitutionally protected rights, and thus the applicant should be required to meet a burden of proof higher than preponderance of the evidence. We overrule this issue because the burden of proof by a preponderance of the evidence adequately protects appellant's parental rights. Appellant argues in his second issue that he received inadequate notice of the hearing on Maria's request for a protective order. We overrule this issue because appellant failed to preserve it for appellate review by first raising it in the trial court. Finally, in his third issue, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that family violence had occurred and was likely to occur in the future. Having reviewed the record, we conclude the evidence is sufficient and overrule this issue. We therefore affirm the trial court's order.

## BACKGROUND

Maria testified that she met appellant in February 2012. They married in November 2012 and divorced in January 2013. They had no children together. According to Maria, they attempted a reconciliation several months later, but it was unsuccessful. They then had an on-and-off relationship that finally ended in June 2015. Appellant was subsequently warned by the management of Maria's apartment complex against trespassing on the property. Because of her interactions with appellant at her apartment complex, Maria moved in with her daughter for a time in October or November 2015. Despite moving, Maria discovered that appellant followed her places and showed up at her place of work.

In December 2015, appellant came to Maria's apartment in the early morning hours and banged on her door. Appellant later confronted Maria in the parking lot of her apartment complex and demanded to know if she was dating a man who drove a black truck.

Appellant confronted Maria again on New Year's Day of 2016. This incident

2

occurred when Maria pulled her car into a restaurant parking lot. Maria's boyfriend was with her in the car. Appellant pulled up behind Maria's car. Appellant then approached Maria's car and banged on her window while screaming at her. Maria quickly drove away from the restaurant. Appellant then approached a friend of Maria's boyfriend, who was still at the restaurant, and demanded that he tell appellant the name of Maria's boyfriend.

Later that same day, Maria went to her daughter's home. While she was still there, appellant drove up in front of the house and started screaming at her. Appellant told Maria that she should have informed him that she had a new boyfriend. Appellant left when Maria threatened to call the police. During this same period, appellant made phone calls to members of Maria's family telling them that he believed she was a drug addict and a prostitute.

Maria testified that appellant called Children's Protective Services, telling them that she was unfit to be around her grandson. According to Maria, CPS required that she move out of her daughter's home. Maria testified that she had to move into a hotel because she could not return to her own apartment given that appellant knew the location and had stalked her there.

In another incident, appellant blocked Maria's car with his truck while she was at a local gas station. Appellant screamed at Maria, once again accusing her of being a prostitute and drug addict. Maria felt threatened because she did not know what appellant would do. Maria tried to leave the station, but her vehicle was blocked by appellant's truck, so she notified the police. The police reviewed the gas station's surveillance video and warned appellant to leave Maria alone.

In other incidents, appellant again followed Maria to the same gas station. Appellant also followed her into a resale shop. Maria explained that this incident alarmed her because the only way he could have found her in the store was to follow

3

her from her workplace. Appellant asked Maria to move back in with him. Maria testified that appellant follows her constantly and she "can't go anywhere without him showing up."

Finally, in an incident that occurred about three weeks before the hearing, appellant followed Maria and her boyfriend when they left Maria's daughter's home. Appellant was driving a rental car. Appellant approached so close that he almost hit the rear of Maria's car. Maria tried to get away from appellant but had to stop at a red light. Appellant then got out of his car, walked up to Maria's car while it was stopped at the red light, and started banging on her window and screaming at her. Upset, Maria drove away in traffic and ultimately flagged down a deputy constable.

Following that incident, appellant continued to email Maria numerous times. Maria did not respond to those emails. Maria testified that she believes appellant, who disregarded police warnings to leave her alone, would continue to engage in this type of conduct and she feared that his behavior would escalate to the point where he would injure her physically.

Maria also testified that appellant had physically assaulted her twice. One assault occurred in 2014 when Maria was packing her boxes to leave their apartment. Appellant would not let her leave, pushing her into the kitchen wall and holding her there. Maria called the police about that incident. In the second incident, appellant slammed Maria between the door and the doorframe when she tried to leave the apartment. Maria testified that appellant owns firearms and she feared that he would use them to harm her. Finally, Maria testified that appellant has been diagnosed as bipolar, has been confined in a mental hospital, and has threatened suicide numerous times.

Appellant also testified during the hearing. He denied all of Maria's allegations of stalking and assault, denied contacting CPS, and contended he had

4

filed for divorce due to Maria's bizarre and bipolar behavior. Appellant did acknowledge running into Maria at the restaurant, at the gas station (twice), and at the resale shop. He contended each encounter was a coincidence. Appellant also denied having any mental health issues and denied having ever threatened to commit suicide. Appellant admitted that he owns firearms. Finally, appellant admitted that he has continued to send emails to Maria. Appellant explained that Maria had never communicated to him that she did not want him to contact her.

Appellant offered four emails into evidence that he received from Maria. They were sent on August 2, 2015, September 1, 2015, December 29, 2015, and January 1, 2016. Appellant notes that the earlier emails contain expressions of intimate feelings by Maria concerning their relationship, and he contends that the later emails demonstrate continued friendly contact.

Maria also testified regarding each email. She indicated that the August email was a "break up" email in which she stated that while they had a special bond, even a friendship would be difficult because of their history. Maria said that the September email was her attempt to get her furniture and other items from his apartment, but appellant did not show up. Maria sent the December email because appellant was continually texting her daughter, and she hoped that her message, "Hope you had a good x mas," would stop him and convince him to move on with his life. Maria sent the January 1 email, several hours after the restaurant incident, at the request of the police because they wanted appellant's cell phone number.

At the conclusion of the hearing, the trial court ruled on the record that the evidence preponderated in support of a finding of family violence and the likelihood of future violence. The trial court found good cause for a no-contact protective order. The court ordered that appellant not possess a firearm. The trial court signed a written order in which it found that appellant and Maria were from the same family,

household, or had a previous dating relationship. It then found that family violence had occurred and would likely occur in the future. The trial court also found that a protective order was necessary for the safety, welfare, and best interest of Maria, and was necessary to prevent family violence. This appeal followed. Tex. Fam. Code Ann. § 81.009 (West 2014).

ANALYSIS

## I. The evidence is legally and factually sufficient to support the trial court's issuance of a protective order.

In his third issue, appellant argues that the evidence is legally and factually insufficient to support the trial court's issuance of a protective order. Because it offers the greatest potential relief if successful, we address this issue first. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

### A. Standard of review and applicable law

When the trial court acts as a factfinder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.).

In a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 807, 827; *In re A.M.*, 418 S.W.3d 830, 838–39 (Tex. App.—Dallas 2013, no pet.).

A legal sufficiency challenge to a family violence protective order may be sustained only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight

6

to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *St. Germain*, 2015 WL 4930588, at *2. If more than a scintilla of evidence exists, it is legally sufficient. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). More than a scintilla of evidence exists if the evidence furnishes some basis for reasonable minds to reach differing conclusions about a vital fact's existence. *Id.* at 782–83.

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering evidence both in favor of and contrary to the challenged findings. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will set aside a factual finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *GTE Mobilnet of S. Tex. Ltd. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We will not substitute our judgment for that of the fact finder merely because we might reach a different conclusion. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

The Family Code provides for issuance of a protective order if the trial court finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. § 81.001 (West 2014). "Family violence" is defined, in pertinent part, as an

> act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault,

7

but does not include defensive measures to protect oneself.

Tex. Fam. Code Ann. § 71.004(1) (West 2014). "Family" is defined to include individuals who are former spouses of each other. Tex. Fam. Code Ann. § 71.003 (West 2014). It is undisputed that appellant and Maria are former spouses. "Given the remedial nature of [the Family Code's protective order provisions], courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes." *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.–Houston [1st Dist.] 2011, no pet.).

## B. Sufficiency review

Appellant argues the evidence is insufficient for three reasons. First, he points out that the assaults occurred in 2014, and "reaching beyond two years in the past for such a history is unreasonable." Second, he asserts that the more recent incidents do not rise to the level of "intending physical harm or a threat of imminent physical harm" and therefore do not amount to "family violence." Finally, appellant emphasizes his testimony during the hearing denying the alleged acts, the lack of testimony from other witnesses corroborating Maria's version of events, and the emails he admitted into evidence. In appellant's view, each of these items weighs against the trial court's findings that family violence occurred and was likely to occur in the future.

The occurrence of the alleged assaults in 2014 does not render the evidence legally or factually insufficient. Nothing in the statute places a time constraint on the acts of family violence that a trial court can consider when presented with an application for a protective order. *See* Tex. Fam. Code Ann. §§ 71.004, 85.001(a)(1).

Moreover, in addition to evidence regarding the 2014 assaults, the record contains evidence of other, more recent acts that could be found to constitute "family violence" under the statute. The trial court heard Maria testify that appellant had

8

recently followed her and confronted her numerous times as detailed above, that she felt threatened by appellant's acts, and that she was concerned that the increasing frequency and level of appellant's acts would lead to future violent acts against her. This constitutes more than a scintilla of evidence that "family violence" had occurred in the past. *See* Tex. Fam. Code Ann. § 71.004(1) (defining "family violence" to include threats "that reasonably places the [family] member in fear of imminent physical harm, bodily injury, assault, or sexual assault"); *Boyd*, 425 S.W.3d at 430 (holding evidence that respondent had engaged in threatening behavior, including following applicant to her mother's office, blocking her car, and jumping on her car's hood, was legally sufficient to support trial court's finding of "family violence"). Similarly, we conclude that there is more than a scintilla of evidence supporting the trial court's finding that appellant would likely commit family violence in the future. *See Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.— Houston [14th Dist.] 2010, pet. denied) ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *In re Epperson*, 213 S.W.3d 541, 543–44 (Tex. App.—Texarkana 2007, no pet.) (concluding past and continuing pattern of behavior showed applicant was reasonable in fearing respondent would commit acts of "family violence" in future).

We also conclude that the trial court's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Boyd*, 425 S.W.3d at 431. The trial judge heard both witnesses testify during the hearing and was free to believe Maria's testimony and disbelieve appellant's, even without evidence corroborating Maria's account. *See id.* (holding trial court was free to place greater weight on applicant's

9

testimony when making family violence finding); *Amir-Sharif v. Hawkins*, 246 S.W3d 267, 272 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) (rejecting contention that protective order was erroneous because no documentary evidence was introduced corroborating applicant's testimony). We overrule appellant's third issue.

## II. The burden of proof by a preponderance of the evidence adequately protects appellant's parental rights.

Appellant complains in his first issue about the burden of proof required to obtain a two-year protective order. Appellant argues that because a protective order may infringe on certain constitutionally protected rights, the trial court should have applied a clear-and-convincing-evidence burden of proof rather than a preponderance-of-the-evidence burden. Appellant specifically complains about the potential effect the order might have on a future proceeding determining conservatorship of a child.[1]

Appellant did not preserve this issue for our review by asking the trial court to apply a higher burden of proof. In any event, the Dallas Court of Appeals recently considered and rejected similar arguments. *See Roper v. Jolliffe*, 493 S.W.3d 624, 636–38 (Tex. App.—Dallas 2015, pet. denied). In *Roper*, the court determined that the interests at stake in a protective order proceeding "do not equate to cases that require proof by clear and convincing evidence, such as the involuntary termination of parental rights or commitment for mental illness." *Id.* at 638. Although section 153.004 of the Family Code does direct a finder of fact determining conservatorship of a child to consider evidence that, within the two-year period preceding the filing

---

[1] Although appellant and Maria have no children, appellant has two minor children from a prior marriage. Appellant also notes that the protective order prohibits him from possessing firearms, but he provides no briefing addressing why this prohibition requires a heightened burden. We therefore do not consider that issue.

10

of the suit or during the pendency of the suit, a protective order was entered against the parent, this provision creates only a rebuttable presumption. *See* Tex. Fam. Code Ann. § 153.004(f); *Alexander v. Rogers*, 247 S.W.3d 757, 761–62 (Tex. App.—Dallas 2008, no pet.) ("[T]he family code establishes a rebuttable presumption that the appointment of the abusive parent as sole managing conservator of a child is not in the best interest of the child."). As such, "it does not make the entry of the protective order dispositive on the issue of conservatorship." *Id.* at 764.

Because the protective order does not directly infringe on appellant's parental rights, we agree with the Dallas Court of Appeals that due process did not require a burden of proof higher than the preponderance-of-the-evidence standard mandated in most civil matters. *See Roper*, 493 S.W.3d at 638 ("The legislature has not required a higher standard of proof and none of Roper's arguments persuade us that a higher standard of proof is required by due process.") We overrule appellant's first issue.

## III.  Appellant has not preserved his second issue for appellate review.

Appellant argues in his second issue that the 48-hour notice he received of the hearing regarding a protective order was unreasonable and insufficient, and therefore denied him procedural due process. Appellant admits, however, that he neither objected on the basis of insufficient notice nor requested a continuance as allowed by the Family Code. See Tex. Fam. Code Ann. § 84.004(a) (West 2014). As a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion." Tex. R. App. P. 33.1(a)(1); *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012). This rule also applies to constitutional complaints, including due process violations. *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (observing that the Supreme Court of the United States and the Supreme

11

Court of Texas have both held that even constitutional claims must be raised in the trial court to preserve error); *Alford v. Thornburg*, 113 S.W.3d 575, 581 (Tex. App.—Texarkana 2003, no pet.) ("Even constitutional errors, such as due process complaints, are waived if not raised first in the trial court."). We hold appellant did not preserve this issue for appellate review because he did not raise his complaint with the trial court. We overrule appellant's second issue.

## CONCLUSION

Having overruled each issue raised by appellant in this appeal, we affirm the trial court's protective order.


/s/    J. Brett Busby
        Justice


Panel consists of Justices Christopher, Busby, and Jewell.