**AFFIRM; and Opinion Filed May 24, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01278-CV

### ANTHONY EDES, Appellant
### V.
### JESUS ARRIAGA, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-05169**

# MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

Anthony Edes appeals the trial court's judgment rendered on a jury verdict awarding him past medical expenses for injuries sustained in an automobile accident. In five issues, Edes contends the trial court erred by refusing jury issues on lost wages, future income, and mental anguish; excluding his physician's affidavit; holding a charge conference without the presence of lead counsel; and not allowing him to admit a document used by defense counsel to impeach him. After reviewing the record, we overrule all issues and affirm the trial court's judgment.[1]

---

[1] In his original and amended petitions, Edes also named Frederico Arriaga, Maria Arriaga, and Government Employees Insurance Company (GEICO) as defendants. During the course of the litigation, Edes nonsuited Frederico Arriaga and Maria Arriaga, and his claims against GEICO were severed into a separate suit. Thus, Jesus Arriaga was the only defendant at trial.

FACTUAL BACKGROUND

On May 9, 2013, Jesus Arriaga was driving a pickup truck on Northwest Highway in light rain. He was traveling at about 25 to 30 mph when he tried to brake for a red light at an upcoming intersection. Arriaga's truck went into a skid and struck a vehicle, driven by Raul Campos, stopped at the light. Impact from the crash pushed Campos's vehicle into the rear of Edes's vehicle. Arriaga said the grill, front bumper, headlights, tires, and front axle of his truck were damaged. Evidence did not indicate the damage to Campos's vehicle, but the back glass of Edes's vehicle was broken out and Edes later learned the frame was broken. Arriaga testified he did not believe the impact to Edes's vehicle was too severe because Edes was pushed forward only a "couple inches, an inch." After the collision, the drivers all exchanged insurance information. An ambulance responded to the scene, but no one was transported. Arriaga paid for the damage to both men's vehicles.

In contrast to Arriaga's testimony, Edes testified the "jolt" from the crash pushed his vehicle forward about fifteen feet. He said the impact caused him to go forward and back, and he hit the back of his head on the headrest. He was checked and cleared by ambulance personnel at the scene and drove away in his vehicle believing he was uninjured. When he was about five minutes from home, however, he said he started losing his peripheral vision. His wife drove him to the emergency room, where he was evaluated and a CT scan done. Edes said "everything looked okay," and he was released after his vision returned with the suggestion to follow up with his primary care physician.

Edes said that after the accident, he had various problems, including headaches, loss of focus, memory issues, and difficulty completing sentences, thoughts, and following conversations. His headaches, which were weekly "for months and years" after the accident, had tapered off. But, Edes said, he suffers from depression, has bouts of tearfulness and crying, cannot multi-task, and

cannot think logically "as much" as he did before but can think on a "linear level." Edes said he had "several MRIs" and other tests and his primary care physician sent him to a person who specialized in "brain injuries." He had memory and inkblot tests to assess his recollection ability and was told he "did average." He said he underwent brain therapy for six months but had no other treatments because, he said, he was told "there is no treatment for my type of brain injury. That it either gets better or it doesn't." He takes Ritalin to improve his focus and also takes testosterone shots, aspirin, and cold medicine to alleviate other symptoms.

At the time of the accident, Edes worked as chief operations officer for AMX, a construction company that handled federal government contracts. He handled all marketing and was in charge of all contracts, subcontracts, and all new proposals. He served as the company's "front man" and earned a base salary of $70,000, plus bonuses that ranged from between $5,000 and $25,000. He continued to work for AMX for two to three years after the accident but eventually could no longer perform his job. AMX reduced his pay because there were no new contracts coming in before finally terminating him. Before he left the company, he tried to find the other employees new jobs as "we started closing the company down." At the time of trial, Edes worked as an insurance adjustor, field agent, where he earns about $30,000 annually. He said the maximum salary for an insurance adjustor is about $45,000, which he should "hit" in about seven years.

Sandra Dooley was a construction coordinator at AMX and reported to Edes. The two had daily contact and she was able to observe what he did for the company. Immediately following the accident, she said Edes did not "look like himself." She could tell he was in pain and had terrible headaches. Over the next few months, he became "a shell of his former self." She said he tried "a lot of different things outside of medical" and even investigated how to "remap" his brain. It got to the point where he was "so unsure of himself" that she would screen his calls so that he

could take notes to refresh his memory before speaking to someone. The most difficult time, she said, was six months after the accident when Edes, unable to focus, could not complete a deposition in a case involving AMX. When she walked down to his car with him, she said Edes cried because he could not do what he needed to do. She said the accident "turned his entire life inside out and sideways."

Dooley told jurors that before the accident, Edes was calm, quiet, unassuming but funny, and was "a lot of fun to work with." After the accident, he started to show signs of frustration, which might lead to anger, and he would become loud and animated at times, which was out of character for him. He also was not as approachable as before. For a while, he lost his sense of humor. He had a broad vocabulary and could communicate with people in all walks of life, but after the accident, he would forget thoughts midstream, would struggle for words, and "just was not the same person." He also lost his confidence and second-guessed himself.

In addition to witness testimony, the trial court pre-admitted billing records for Edes's emergency room visit and more than three years' of office visits and consultations with medical professionals. No medical records regarding Edes's treatment were introduced, and the trial court excluded a letter from Edes's physician, Dr. James Mitlyng, because, among other things, it was hearsay. Several photographs depicting the damage to the vehicles of Arriaga and Edes were also admitted.

After both sides rested and during discussion on the jury charge, Arriaga moved for a directed verdict on Edes's claims for lost wages and mental anguish, arguing that Edes failed to present any expert testimony to connect these damages to a brain injury caused by the accident. The trial court granted the motion. Following deliberations, the jury found Arriaga caused the occurrence in question and awarded $7886.04 in medical care expenses incurred in the past as

damages that resulted from the occurrence. The trial court reduced the verdict to final judgment. Edes filed a timely motion for new trial, which the trial court denied. This appeal ensued.

INVITED ERROR

Before turning to the merits, we first address Arriaga's assertion that Edes waived any complaint regarding the judgment by drafting, submitting, and approving the judgment signed by the trial judge. He argues the doctrine of "invited error" precludes such complaints.

Under some circumstances, when a party files a motion to enter judgment and the trial court grants the motion and renders the requested judgment, the movant cannot later complain of that judgment. *Davenport v. Hall*, No. 04-14-00581-CV, 2019 WL 1547617, at \*7 (Tex. App.—San Antonio Apr. 10, 2019, no pet. h.). The reason for this rule is that a party may not request the trial court take an action and then complain on appeal when the trial court did what it was asked to do. *Id*.

The supreme court has recognized, however, that "[t]here must be a method by which a party who desires to initiate the appellate process may move the trial court to render judgment without being bound by its terms." *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 67 (Tex. 2015) (quoting *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989) (per curiam)). A proposed judgment submitted by a party need not note the submitting party's disagreement with the contents of the judgment to maintain the right to appeal. *Andrew Shebay & Co., P.L.L.C. v. Bishop*, 429 S.W.3d 644, 647 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Rather, clear objections in the trial court or post-trial proceedings evidencing disagreement with the judgment are sufficient. *Id*.

Here, the record does not contain a motion for judgment; rather, Edes filed a letter with the court submitting a proposed judgment. The letter, signed by Edes's attorney, informed the judge that counsel approved the judgment and was forwarding a copy to opposing counsel for signature.

Ultimately, the judgment was signed by the trial judge. The statement "APPROVED BY" was above Edes's attorney's signature on the judgment.[2]

Arriaga argues that Edes should have reserved a right to complain in his letter submitting the proposed judgment or noted that he did not approve as to the substance of the judgment. Having failed to do so, Arriaga contends Edes may not attack the judgment. Admittedly, Edes did not express any reservations about the judgment. But, even assuming his approval was to both form and substance of the judgment, Edes objected at the charge conference when Arriaga successfully argued to exclude from the jury's consideration issues on lost wages and mental anguish. Then, after the trial court signed the judgment, Edes moved for a new trial on the same grounds as well as others. Finally, the judgment itself acknowledges that Edes's objections to the charge were overruled. *See Hooks*, 457 S.W.3d at 67 (explaining that when argument asserted on appeal is not inconsistent with the judgment, the argument is not waived even when plaintiff files proposed judgment). Given all the circumstances in this case, we cannot conclude that Edes has waived his right to complain about the judgment.

EXCLUSION OF DAMAGE ISSUES

In his first issue, Edes argues the trial court erred in excluding his issues of lost wages and loss of future income in the jury charge. In his fourth issue, he complains the trial court erred by failing to submit mental anguish as a damage element.

Although both sides were required by a scheduling order to provide a proposed charge, neither did, meaning Edes proposed no written questions, instructions, or definitions for submission to the jury. At the charge conference, the parties used the trial court's proposed charge to make objections, a copy of which is not part of this record. Arriaga moved for directed verdict with respect to "mental anguish and lost wages," arguing there was no medical causation evidence

---

[2] Arriaga's attorney approved the judgment as to form only.

to support their submission.  Over Edes's objection, the trial court granted the motion.   Neither side mentioned "future income" or loss of earning capacity in the future, and the jury charge only submitted past medical expenses as damages.

Generally, a request for submission is required to preserve the right to complain of a trial court's failure to submit a question. *Sam Rayburn Mun. Power Agency v. Gills,* No. 09-16-00339-CV, 2018 WL 3580159, at *12 (Tex. App.—Beaumont July 26, 2018, pet. denied) (mem. op.); *see* TEX. R. CIV. P. 273, 278, 279.  For purposes of this opinion, however, we will assume without deciding that Edes preserved his complaints regarding mental anguish and lost wages despite his failure to submit written questions, instructions, or definitions.  *See Sturm v. Muens*, 224 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[T]he failure to request a jury submission does not waive a claim that the trial court has already disposed of as a matter of law, such as by granting a directed verdict.").  Further, we will presume that "lost wages" includes "loss of future income" for purposes of our discussion.

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law.  *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.).  A directed verdict for a defendant may be proper in three situations:  (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery.  *Varel Int'l Indus., L.P. v. PetroDrillBits Int'l, Inc.,* No. 05-14-01556-CV, 2016 WL 4535779, at *3–4 (Tex. App.—Dallas Aug. 30, 2016, pet. denied).

When reviewing a directed verdict, we apply a legal sufficiency or "no evidence" standard of review and consider all the evidence in a light most favorable to the nonmovant, and resolve all reasonable inferences that arise from the evidence admitted at the trial in the nonmovant's favor.

*King's Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App—Dallas 2015, pet. denied). If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 220–21 (Tex. 2011). To the extent the trial court's ruling on a directed verdict is based on a question of law, an appellate court reviews that aspect of the ruling de novo. *Varel Int'l*, 2016 WL 4535779, at *4.

In a typical negligence case, "the plaintiff must establish two causal nexuses: (1) between the defendant's negligent *act* and the *occurrence*; and (2) between the *occurrence* and the *injuries* of which the plaintiff complains." *Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678, 684 (Tex. App.—Dallas 2000, no pet.); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). Here, the issue is whether Edes presented evidence of causation between the occurrence, i.e. the car accident, and the injuries of which he complains. Edes claimed he suffered lost wages and mental anguish related to a brain injury caused by the accident.[3] To establish the necessary link, he relied on his own testimony and that of a co-worker. The question is whether lay testimony was sufficient in this case. We conclude it was not.

Lay testimony may be used as evidence of causation in certain circumstances, but "[w]hen expert testimony is required, lay evidence supporting liability is legally insufficient." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). Lay evidence is allowed to establish causation "in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability," the causal relationship between the

---

[3] At trial, Edes referred to his condition as a "brain injury." On appeal, he refers to his condition as a "head injury," "brain condition," and "problems with his brain function."

event and the condition." *Jelinek*, 328 S.W.3d at 533 (quoting *Morgan*, 675 S.W.2d at 733). Thus, in the context of an automobile accident, "lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" could suffice to support a causation finding between the automobile accident and basic physical conditions that (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents. *Guevara*, 247 S.W.3d at 666–67.

By way of example, *Guevara* explained that expert testimony would not be necessary to support a finding of causation if the plaintiff was pulled from a damaged automobile with overt injuries such as broken bones or lacerations and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident. *Guevara*, 247 S.W.3d at 667. In such a case, "the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons." *Id.* Similarly, our sister court has concluded that a plaintiff's lay testimony that he hit his teeth on a steering wheel during a car accident and his teeth started crumbling and falling out days later was sufficient to prove causation. *See Figeroa v. Davis*, 318 S.W.3d 53, 61 (Tex. App.—Houston [1st Dist.] 2010, no pet.). There, the court determined the plaintiff's testimony established "a sequence of events which provide[d] a strong, logically traceable connection between the event and the condition" sufficient to prove causation and likened the evidence to the "pain, bone fractures, and similar basic conditions following an automobile collision" identified in *Guevara*. *Id*.

But the diagnosis of a skull fracture is not within the general experience of ordinary laypersons, s*ee Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982), nor would injuries such as

synovial cysts, herniated discs, radiculopathy, and complex regional pain syndrome. *See Williams v. Crawford*, No. , No. 03-16-00696-CV, 2018 WL 1124306, at \*10 (Tex. App.—Austin March 2, 2018, no pet.) (mem. op.) (stating expert testimony necessary to establish causal nexus between accident and synovial cyst); *City of Laredo v. Garza*, 293 S.W.3d 625, 632–33 (Tex. App.—San Antonio 2009, no pet.) (concluding that lay testimony was not sufficient to prove medical causation of disc herniations, radiculopathy, and complex regional pain syndrome).

Here, Edes asserts there is sufficient lay evidence of causation and directs us to testimony by himself and a co-worker that he developed symptoms immediately after the accident that he did not have before the accident. But evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises only suspicion that the event at issue caused the conditions and is not legally sufficient to support a finding of legal causation. *Guevara*, 247 S.W.2d at 668. Moreover, we note that the only symptom Edes complained of immediately after the accident was his vision, but he said he was released from the emergency room when his "eyesight came back." Although he testified to other symptoms, it is unclear when they manifested and for what length of time.

Edes also argues that he was allowed to testify without objection that (1) he underwent brain therapy treatments for six months after the accident (although he did not indicate how long after the accident), (2) that doctors told him there was no treatment for his "brain condition," (3) that he never had problems with his brain function or concussions prior to the accident, and (4) that he had been told his brain injury would not get any better. But this testimony does not establish that his "brain injury" was a result of the automobile accident nor were any medical records admitted to support his contention.

This case does not fall within the kinds of "basic" injuries identified in *Guevara* in which expert testimony regarding the causal connection between an occurrence and a physical condition

is unnecessary. *Id*. at 667. Edes was not pulled from a damaged vehicle with "overt injuries" such as broken bones or lacerations, nor did he experience objective symptoms, such as crumbling teeth, shortly after the accident. Rather, Edes claims he suffered a permanent "brain injury" as a result of the accident, leaving him with symptoms not readily overt. The medical condition he claims as a result of the accident is more akin to that in *Roark,* where the court concluded the diagnosis of a skull fracture was not within the experience of ordinary laymen, or to cases involving herniated discs, synovial cysts, or radiculopathy.

Finally, we reject any suggestion that the trial judge's ruling was "incongruous" because she allowed a question regarding past medical expenses. Arriaga did not object to submission of an issue regarding past medical expenses. Moreover, in *Guevara*, the court acknowledged that non-expert evidence of circumstances surrounding the accident and the plaintiff's complaints would be sufficient to allow a layperson of common knowledge and experience to determine that the plaintiff's immediate post-accident condition which resulted in his being taken to, and examined in, an emergency room were causally related to the accident. *Id.* at 669.

Because we conclude expert medical testimony was required to establish a nexus between the accident and Edes's claims for lost wages, future income, and mental anguish related to a brain injury, and none was provided, the trial court did not err in failing to submit these damage elements to the jury. We overrule the first and fourth issues.

EXCLUSION OF EVIDENCE

In his second issue, Edes complains about the exclusion of a "medical records affidavit" of Dr. James Mitlyng that he contends was admissible under Texas Rule of Civil Procedure 18.001, as a business record under Texas Rule of Evidence 902, and as an exception to hearsay.

Immediately after the jury was sworn in and released for the day, Edes raised the issue of whether the trial court would admit "Dr. Mitlyng's letter." Edes argued the letter was admissible

under Texas Rule of Evidence 803.4, the medical diagnosis and treatment exception to hearsay. After some discussion, the trial court ruled the document was inadmissible because, among other reasons, it was not made for the purpose of medical diagnosis or treatment.

Although Edes attempted to admit a "letter" from Mitlyng in the hearing, on appeal Edes complains about the exclusion of Mitlyng's "affidavit" and directs us to the clerk's record to review the document. The clerk's record contains (1) a "Medical Affidavit of Dr. James A. Mitlyng" filed on June 12, 2017 and (2) a "Medical Records Affidavit" of Victoria C. Calloway, who identified herself as the person in charge of records for Dr. Mitlyng, filed on June 26, 2017. Calloway's affidavit attests that a letter, prepared by Mitlyng, is attached. Thus, the record establishes the letter and affidavit were separate documents.[4]

To preserve error as to the exclusion of evidence, a party must (1) attempt during the evidentiary portion of the trial to introduce the evidence, (2) if any objection is lodged, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible, (3) obtain a ruling from the court, and (4) if the court rules the evidence is inadmissible, inform the court of its substance through an offer of proof unless the substance was apparent from the context. *See* TEX. R. EVID. 103(a)(2); *Sparks v. Booth*, 232 S.W.3d 853, 870 (Tex. App.—Dallas 2007, no pet.).

Although Edes asserts in his brief that he attempted to introduce the affidavit, he does not cite us to a place in the record to support his assertion. Moreover, we have reviewed the record and could not locate any attempt by Edes to offer the affidavit. Accordingly, we conclude he has waived his complaint.

To the extent Edes is complaining about the exclusion of the letter, it is not contained in the appellate record. The letter was not attached to the affidavit in the clerk's record nor was it

---

[4] The clerk's record also contains Plaintiff's Exhibit List, which included both an affidavit and a letter of Mitlyng.

made a part of the reporter's record through an offer of proof. Consequently, we cannot determine whether (1) it should have been admitted or (2) whether its exclusion is harmful. Consequently, Edes has failed to preserve his complaint. *See* TEX. R. EVID. 103(a)(2); *In re A.M.*, 418 S.W.3d 830, 840 (Tex. App.—Dallas 2013, no pet.) (without offer of proof, appellate court cannot determine whether exclusion of evidence was harmful). We overrule the second issue.

In his fifth issue, Edes complains the trial court abused its discretion by not allowing him to introduce into evidence a document that Arriaga used to impeach him on cross-examination. Here, he generally cites rules 106 and 107 to support his complaint. *See* TEX. R. EVID. 106 ("Remainder of or Related Writings or Recorded Statements"); TEX. R. EVID. 107 ("Rule of Optional Completeness").

During the cross-examination of Edes, Edes testified he had never been diagnosed with tinnitus. Defense counsel then showed Edes a document, which Edes had produced, to impeach him. Counsel had Edes read the following from the document: "Positive findings are decreased hearing with tinnitus from being exposed to artillery." Edes did not object to the inquiry.

Prior to redirect, a discussion off the record was held. Edes's counsel said he wanted the "medical records" that Edes had just read from "to introduce them into evidence for the jury to see." The trial judge explained the document was not "offered for that purpose" but told counsel if there were a "particular exhibit" he wanted to offer, he needed to do that "properly for the Court." Counsel responded, "All right," but he did not thereafter attempt to offer the evidence. After another witness had testified and he had rested his case, Edes attempted to revisit the issue. After a brief discussion, the court and counsel went "off the record." When the proceedings resumed on the record, nothing else was said about the document.

The next day, during a charge conference, Edes brought the matter up again. He told the judge that the document was "a portion of a demand letter" with medical bills attached that had

been sent to opposing counsel by Edes. Edes argued: "And we're offering the proof, Your Honor, that these medical records should come in because they were used in front of the jury. You can't go using something in front of the jury that's not in evidence without running the risk that you're going to have it come into evidence by the other side." The trial court denied the request, stating that the medical records were not used in front of the jury, both sides had rested, and the evidence was closed. At that point, Edes did not attempt to offer the document for record purposes or through a formal offer of proof nor was its substance made known, other than that it was a demand letter with medical records attached. Without the document, we cannot determine whether its exclusion was harmful. *See* TEX. R. EVID. 103(a)(2); *In re A.M.*, 418 S.W.3d at 840. We overrule the fifth issue.

### ABSENCE OF LEAD COUNSEL

In his third issue, Edes argues the trial court erred in holding a charge conference without the presence of his lead counsel. As authority, he cites Texas Rule of Civil Procedure 8 without any analysis.

On the first day of trial, two attorneys announced appearances for Edes: Dennis R. Croman and Patrick Naylor. The evidence concluded on the same day, and discussion was held on the charge. The next morning, Arriaga moved for a directed verdict on negligence and some elements of damages. Naylor argued on behalf of Edes. After much of the arguments had been made, Croman arrived, acknowledged he was "late on this," and asked to "chime in." The trial judge said, "Sure." Croman then made his argument.

Generally, to preserve error, a party must specifically object, clearly identify the error, and explain the grounds for the objection. *BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 401 (Tex. 2017). Here, Edes did not object that the trial court went forward with the charge conference in the absence of his lead counsel. Regardless, the trial court allowed lead counsel the

opportunity to argue the issue after he arrived at the hearing. Moreover, Edes was represented by counsel who had made an appearance in the case. Nothing in rule 8 indicates that other attorneys, particularly those who have made an appearance, are not authorized to act on behalf of the party. *See City of Tyler v. Beck*, 196 S.W.3d 784, 787 (Tex. 2006) (rejecting argument that, under rule 8, notice of appeal was untimely because post-judgment motions were filed by new counsel who had not been designated as city's attorney in charge); *Phillips v. Tex. Dep't of Public Safety*, 486 S.W.3d 58, 61 (Tex. App.—El Paso 2016, no pet.) (rejecting argument that assistant attorney general who appeared at hearing and argued motions on behalf of DPS did not properly present notice to appear in court ). We overrule the third issue.

We affirm the trial court's judgment.

/Amanda L. Reichek/

AMANDA L. REICHEK
JUSTICE

171278F.P05

–15–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ANTHONY EDES, Appellant

No. 05-17-01278-CV     V.

JESUS ARRIAGA, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-05169.
Opinion delivered by Justice Reichek;
Justices Schenck and Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JESUS ARRIAGA recover his costs of this appeal from appellant ANTHONY EDES.

Judgment entered this 24th day of May 2019.